FILED: NEW YORK COUNTY CLERK 12/14/2016 07:25 PM
NYSCEF DOC. NO. 1

INDEX NO. 160513/2016
RECEIVED NYSCEF: 12/14/2016

2017-016541

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------- x

LOCAL 1180, COMMUNICATIONS WORKERS
OF AMERICA AFL-CIO, Individually and on
behalf of its members, LOURDES ACEVEDO,
NATHIA BELTRAN, ADRIENNE REED, JO
ANN RICHARDS, ROSEANN SCHEMBRI, on
behalf of themselves and all other similarly-situated
individuals,

**SUMMONS WITH NOTICE**

                              Plaintiffs,

         -against-

Index No.: 160513/2016

CITY OF NEW YORK and DEPARTMENT OF
CITYWIDE ADMINISTRATIVE SERVICES,

Date Index No. Purchased:

12/14/2016

                              Defendants.
-----------------------------------------------------------------x

TO THE ABOVE NAMED DEFENDANTS:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to appear in this
action by serving a notice of appearance on the Plaintiffs at the address set forth below within 20
days after the service of this Summons (not counting the day of service itself), or within 30 days
after service is complete if the Summons is not delivered personally to you within the State of New
York.

**YOU ARE HEREBY NOTIFIED THAT** should you fail to answer or appear, a judgment
will be entered against you by default for the relief demanded below.

Dated:  December 14, 2016
         New York, New York

Yetta G. Kurland
THE KURLAND GROUP
*Attorneys for Plaintiffs*
160 Broadway, East Building, 11th Floor
New York, NY 10038
212-253-6911

1

## NOTICE PURSUANT TO CPLR § 305

Defendant City of New York:                                    New York City Hall
                                                              250 Broadway
                                                              New York, NY 10007

Defendant Department of Citywide Administrative Services:      1 Centre Street
                                                              New York, NY 10007

Notice: The nature of this action are claims of intentional and unintentional discrimination against Plaintiffs based on their sex, gender, and race in violation of the Equal Pay Act of 1963, as amended, 42 U.S.C. §206, *et seq.*, the New York State Equal Pay Law, N.Y. Labor Law §§ 194 *et seq.*, the New York State Human Rights Law, New York Executive Law §§290, *et seq.*, the New York City Human Rights Law, Administrative Code of the City of New York §§8-101, *et seq.*, Civil Rights Act of 1871, 42 U.S.C. § 1981, *et seq.*, and Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.*, based on Defendants' unlawful employment policies and/or practices. The nature of this action is more fully detailed in the underlying Charge of Discrimination dated December 5, 2013, and the EEOC's Determination of reasonable cause dated April 1, 2015, both of which are incorporated and made part of this Notice and attached hereto as **Exhibits A and B** respectively. The nature of this action is further detailed in the Supplemental Charge of Discrimination dated November 19, 2014, and the EEOC's Determination of reasonable cause dated April 1, 2015, attached hereto as **Exhibits C and D**.

Relief Sought: The relief sought includes equitable and injunctive relief, including all remedial measures outlined in the EEOC Conciliation Request and Proposed Recommendations, attached hereto as **Exhibit B**, which seeks to redress past violations and prevent further violations of the Equal Pay Act, the New York State Equal Pay Act, the New York State Human Rights Law,

2

the New York City Human Rights Law, § 1981 and § 1983, as well as monetary relief including but not limited to back pay, liquidated damages, compensative and punitive damages, as well as attorneys' fees, expenses, costs, and interest, not less than $246 million, as outlined in the EEOC Conciliation Request and Proposed Recommendations attached hereto as **Exhibit B.**

Should Defendants fail to appear herein, judgment will be entered by default for an amount to be determined later, but not less than $246 million, with interest as well as attorneys' fees, expenses, and costs.

Venue: Plaintiff designates New York County as the place of trial. The basis of this designation is that the causes of action arose in New York County and the Defendants' principal place of business is in New York County.

3

# THE
# KURLAND
## GROUP

ATTORNEYS AT LAW



December 4, 2013

**VIA HAND DELIVERY**
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004

Re:   **Local 1180, Communications Workers of America AFL-CIO, et al v.
City of New York, et al**

To Whom It May Concern:

    Enclosed please find the EEOC Complaint that this office, along with Mirkin & Gordon,
P.C., is filing for Local 1180, Communications Workers of America AFL-CIO, individually and
on behalf of its members, along with Jane Doe Administrative Managers #1-1000, Jane Doe
Former Administrative Managers #1-1000 and similarly-situated individuals in the above
referenced matter against the City of New York and related parties.

    We write to request an expedited mediation schedule in an effort to determine if
settlement is possible prior to initiating litigation. Please let us know a time most convenient for
your office and will make ourselves available. Further, if you require any further information,
please contact us.

Sincerely,

Yetta G. Kurland

Enc.

160 BROADWAY
EAST BLDG - 11TH FL.
NEW YORK, NY 10038

P: 212 253 6911
F: 212 614 2532

KURLANDGROUP.COM

YETTA G. KURLAND
kurland@kurlandassociates.com

ERICA T. KAGAN
kagan@kurlandassociates.com

ZACHARY ALBRIGHT WHITING *
whiting@kurlandassociates.com

* admitted for practice in New Jersey

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| LOCAL 1180, COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, individually and on behalf of its members, along with JANE DOE ADMINISTRATIVE MANAGERS #1-1000 and JANE DOE FORMER ADMINISTRATIVE MANAGERS #1-1000 | 212-226-6565 | n/a |

Street Address                                                   City, State and ZIP Code

6 Harrison Street                                    New York, NY 10013

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CITY OF NEW YORK, MAYOR MICHAEL BLOOMBERG | 500+ | 212-788-3000 |

Street Address                                                   City, State and ZIP Code

260 Broadway                                        New York, NY 10007

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES | 500 + | 212-356-1000 |

Street Address                                                   City, State and ZIP Code

1 Centre Street                                      New York, NY 10007

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached Affidavit, which outlines claims of discrimination and retaliation based on sex, gender and race pursuant to Title VII, NYS Human Rights Law, and other related causes of action.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

NOV. 25 2013          *Arthur Cheliotes*
Date                    Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE
-------------------------------------------------------------x

LOCAL 1180, COMMUNICATIONS WORKERS OF
AMERICA AFL-CIO, Individually and on behalf of its
members, JANE DOE ADMINISTRATIVE MANAGERS
#1-1000, JANE DOE FORMER ADMINISTRATIVE
MANAGERS #1-1000 and similarly-situated individuals,

                                Claimants,

                    -against-

CITY OF NEW YORK, MICHAEL BLOOMBERG,
Individually and as Mayor of the City of New York, and
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES,

                                Respondents.

-------------------------------------------------------------x

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

**AFFIDAVIT IN
SUPPORT OF
COMPLAINT**

EEOC Charge:
SDHR Charge:

   PLEASE TAKE NOTICE, that Claimants LOCAL 1180, COMMUNICATIONS

WORKERS OF AMERICA AFL-CIO (hereinafter "Local 1180"), individually and on behalf of

its members, along with JANE DOE ADMINISTRATIVE MANAGERS #1-1000, JANE DOE

FORMER ADMINISTRATIVE MANAGERS #1-1000 and similarly-situated individuals

(collectively "Claimants"), by and through their attorneys, The Kurland Group and Mirkin &

Gordon, P.C., do hereby complain of the Respondents as follows:

## PARTIES

1.       Claimant LOCAL 1180 represents more than 8,000 women and men who work in agencies of the City of New York.   LOCAL 1180 is an affiliate of the Communications Workers of America (CWA) with offices at 6 Harrison Street, New York, New York 10013.

2.       Claimants JANE DOE ADMINISTRATIVE MANAGERS #1-1000 are LOCAL 1180 members who are currently employed as Administrative Managers in agencies of the City of New York.

3.       Claimants JANE DOE FORMER ADMINISTRATIVE MANAGERS #1-1000 were formerly employed as Administrative Managers in agencies of the City of New York from the time period 2007-2013.

4.       Respondent CITY OF NEW YORK (hereinafter "City") is a municipality duly incorporated under the laws of the State of New York and maintains its principle place of business at 260 Broadway, New York, New York 10007.

5.       Respondent MICHAEL BLOOMBERG is the Mayor of the City of New York, named individually and in his official capacity, and maintains his principle place of business at 260 Broadway, New York, New York 10007.

6.       Respondent DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES ("DCAS") is an agency of the City of New York and is responsible for administering, testing, placement, and compensation of Administrative Managers. DCAS maintains its principle place of business at 1 Centre Street, New York, New York 10007.

## RELEVANT STATUTES

7.      Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et seq.*, more specifically, statutory provisions prohibiting discrimination and retaliation based upon race, sex, and/or gender.

8.      The New York State Human Rights Law, New York Executive Law, Article 15, §290, *et seq.*, more specifically, statutory provisions prohibiting discrimination and retaliation based upon race, sex, and/or gender.

9.      The New York City Human Rights Law, Administrative Code and Charter, §8-101, *et seq.*, more specifically, statutory provisions prohibiting discrimination and retaliation based upon race, sex, and/or gender.

10.     The Equal Pay Act of 1963 ("EPA"), as amended, 42 U.S.C. §206, *et seq.*

11.     New York State Equal Pay Law ("NY EPL"), N.Y. Labor Law §§ 194 *et seq.*

12.     Civil Rights Act of 1871, 42 U.S.C. § 1981, *et seq.*

13.     Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.*

14.     All Respondents are subject to the provisions of the aforementioned statutes.

## VENUE

15.     Venue is appropriate as prohibited conduct complained of herein occurred and continues to occur in New York County, the county in which the Respondent agencies maintain their headquarters for purposes of doing business.

3

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

16.     Claimant Local 1180 represent over 8,000 City workers, the majority of whom are women and minorities. It is one of the largest locals in the City of New York.

17.     In 2009, after litigating the title for years, Local 1180 was certified to begin negotiating for the title, Administrative Manager, Non-Managerial (hereinafter "Administrative Manager"). See *CWA, Local 1180*, 2 OCB2d 13 (BOC 2009).

18.     Upon review of these employees' salaries and work histories, complaints raised by individual members holding the title regarding pay differentials between them and their white male counterparts, and an analysis of broader statistical information regarding both current pay rates and past pay rates for these and other positions, Claimants allege that the City has engaged in a pattern or practice of wage suppression in segregated job titles, in specific that of Administrative Manager, along with disparate promotional practices that has adversely impacted women and members of color in violation of Title VII, the New York State Human Rights Law, New York City Human Rights Law, EPA, NY EPL,. § 1981, and § 1983.

19.     The Administrative Manager title had historically been employed by primarily white male employees. Over the years, however, more women and minorities were appointed to the title. It is now a female-dominated position comprised of approximately 78% women — many of whom are women of color.

20.     When the title was held primarily by white men, the salary ranges under the City-maintained Pay Plan for Managerial Employees ("PPME") reflected the value of the job. However, as the numbers of minorities and women in the title increased, the City

suppressed the minimum salary of Administrative Managers while at the same time increasing the maximum salary.

21.     The minimum salary has been frozen at $53,373.00 for many years while the maximum salary has increased to $136,198.00. As such, an Administrative Manager being paid the minimum salary authorized for their position today earns $82,825.00 less than a person being paid the maximum salary with the same title.

22.     Had the minimum salary increased in tandem with the maximum, the minimum salary would be as much as $108,958.00. Further, if the minimum salary increased at the same rate as the salary of the Principle Administrative Associates ("PAA"), the position from which Administrative Managers are promoted, the minimum salary would be approximately $85,024.00. Indeed, a person who is "promoted" from a PAA3 to an Administrative Manager can actually currently experience a decrease in pay. In fact, the minimum salary has not even increased to adjust for inflation. If it had, the minimum salary would be at least $78,971.00. This exemplifies the City's practice of undervaluing and underpayment of the Administrative Manager title.

23.     Claimants assert that this wage disparity is the result of purposeful wage suppression in a segregated job title, which, along with a historic problem of highly subjective promotional and pay practices, has harmed women and minorities and does not allow fair compensation for comparable job performance or experience.

24.     Statistical analysis indicates that Administrative Managers who are female and people of color are being paid less despite the fact that they are performing the same or substantially the same work as their white male counterparts.

25.     Furthermore, Administrative Manager is the highest title of the occupational

group – there is no opportunity for advancement beyond this title in the Civil Service System, and many Administrative Managers have not received raises in many years. Further, there are other titles in City employment whose employees perform the same or substantially the same work to that of Administrative Managers and, upon information and belief, are paid higher salaries.

26.     Under the Bloomberg administration, the City has continued practices that have adversely impacted women and minorities, despite the fact that it had knowledge of the disparate impacts and despite being given an opportunity to correct them.

27.     It is Claimant's contention that, rather than taking corrective action, the City has willfully ignored this information, and instead engaged in retaliatory action against Local 1180 when Local 1180 attempted to negotiate a fair wage for Administrative Managers and to correct the inequities complained of here. See *CWA, L. 1180*, 6 OCB2d 31 (BCB 2013) (IP) (Docket No. BCB-3082-13), in which the City's Office of Collective Bargaining determined that the City of New York was not bargaining in good faith when it filed a complaint against Local 1180 for alleging the discriminatory practices outlined here.

28.     As a result of the foregoing, Administrative Managers have been subjected to a pattern or practice of discrimination in the terms, conditions, benefits and privileges of their employment by the Respondents named herein, based upon the sex, gender and/or race of the individual members.

29.     Further, Respondents have limited, segregated, and/or classified Administrative Managers in a way which has deprived them of employment opportunities and/or otherwise adversely affected their status as employees, because of their sex,

gender and/or race.

30.     Finally, Respondents had knowledge of these practices and their impact on Claimants and did nothing, and further, when Claimants attempted to negotiate correction of the foregoing, Respondents did not take corrective action, and retaliated against Claimants.

31.     Claimants intend to file a class action lawsuit to remedy these disparities with anticipated class participation rates upwards of 90%.

Dated: November 25, 2013
        New York, New York

By: Arthur Cheliotes, President
Local 1180, Communications Workers of America
AFL-CIO

Sworn to before me this 25th
day of November, 2013

Notary Public

ERICA T. KAGAN
Notary Public, State of New York
No. 02KA6213505
Qualified in Kings County
Commission Expires November 9, 2017



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800) 669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

EEOC Charge No: 520-2014-00608

Arthur Cheliotes                                              **Charging Party**
CWA Local 1180
6 Harrison Street
New York, New York 10013

v.

City of New York                                             **Respondent**
Department of Citywide Administrative Services
1 Centre Street
New York, New York 10007

## <u>DETERMINATION</u>

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under the Equal Pay Act of 1963 ("EPA") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

The Respondent is an employer within the meaning of the EPA and Title VII and all requirements for coverage have been met.

The charge is brought by Arthur Cheliotes, president of Local 1180 of the Communications Workers of America, AFL-CIO ("Union"), on behalf of a class of African American and Hispanic women currently or formerly employed as Administrative Managers in agencies of the City of New York. The Union, on behalf of the Charging Parties, alleges that Respondent has and continues to engage in a discriminatory pattern of wage suppression and subjective promotion based on Charging Parties' sex, race, and national origin. The Union further claims that Respondent's facially neutral policies regarding assignment, promotion, and wages have had a disparate impact on the class of female African American and Hispanic Administrative Managers. The Union alleges that the minimum or entry-level salary of Administrative Managers, which is disproportionately paid to Hispanic and African-American women, has been frozen for many years, while the maximum salary of Administrative Managers, paid to a class of senior employees who are primarily Caucasian males, has increased significantly. The Union asserts that there are few opportunities for promotion beyond Administrative Manager, and that many within this title have not received raises in many years to the detriment of the generally less-senior African American and Hispanic women relative to their generally more-senior white male counterparts. Charging Parties further contend that Respondent refused to bargain in good faith with the Union, in retaliation for Charging Parties' complaints of discrimination.

Respondent is the City of New York's Department of Citywide Administrative Services (DCAS), representing the City and its agencies. In their position statement, Respondent challenged the Union's ability to bring forth an EPA claim on behalf of another party. Assuming that the union has standing to file a charge, Respondent alleges that all claims accruing prior to December 5, 2011 are untimely and should be dismissed. Respondent denies the Charging Parties' allegations of discrimination and retaliation due to the lack of evidence that was provided. Respondent provided a small sample of Administrative Managers along with their gender, race, agency, salary, and a description of their job duties in an attempt to demonstrate that Administrative Managers do not perform equal work.

The investigation reveals that relevant statutes allow a Union to file charges on behalf of third parties. Additionally, as the Charging Parties' are alleging that Respondent was, and still is, engaged in a continuous pattern and practice of discrimination, the question of EPA and Title VII viability for claims accruing prior to December 5, 2011 is an open issue suitable for further investigation.

Respondent's arguments regarding the Charging Parties' lack of evidence of discrimination and retaliation do not withstand scrutiny. The Union and the Charging Parties have brought prima facie charges under Title VII and the EPA, and so the burden of proof has shifted to the Respondent. The evidence provided by the Respondent was insufficient to evaluate the case. The Commission requested further information from the Respondent as early as March 2014, but none was provided. Respondent was specifically informed on December 11, 2014, that it risked an adverse determination if it did not respond on or before January 5, 2015. On February 27, 2015, Respondent formally declined to provide the requested information.

Because the Respondent has been afforded an opportunity to provide an appropriate response to the charge of discrimination and has failed to do so, the Commission determines that the silence is an admission of the allegations in the charge, and exercises its discretion to draw an adverse inference with respect to the allegations. The Commission concludes that anything that Respondent could submit would not support its position.

Based on the above evidence, the Commission has determined that there is reasonable cause to believe that Respondent violated the EPA and Title VII.

This determination is final. Title VII requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion.

In order to come into compliance with the EPA, wage increases and backpay must be granted to the aggrieved persons. Failure to voluntarily comply with the statute may result in a suit by the Commission.

Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with the EPA, Title VII, and the Commission's Procedural Regulations. The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

Kevin J. Berry
District Director

April 1, 2015
Date

cc: Yetta G. Kurland
The Kurland Group
160 Broadway East Bldg, 11th Fl
New York NY 10038

cc: Donna A. Canfield,
Assistant Corporation Counsel
NYC Law Department
100 Church Street
New York, NY 10007

3



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3630
General FAX: (212) 336-3625

In the matter of:

Charge No: 520-2014-00608

Charging Party
Arthur Cheliotes
CWA Local 1180
6 Harrison Street
New York, New York 10013

v.

Respondent
City of New York
Department of Citywide Administrative Services
1 Centre Street
New York, New York 10007

## CONCILIATION AGREEMENT

An investigation having been made under Title VII of the Civil Rights Act of 1964, as amended, (Title VII) and the Equal Pay Act of 1963, as amended (EPA), by the U.S. Equal Employment Opportunity Commission (EEOC) and reasonable cause having been found, the parties do resolve and conciliate the matter as follows:

1. The class of Charging Parties agrees not to sue the Respondent with respect to any allegations contained in the above-referenced charge. EEOC agrees to neither use the above-referenced charge as the jurisdictional basis for filing a lawsuit against the Respondent, nor refer such a charge to the Department of Justice for consideration of a lawsuit. However, nothing in this Agreement shall be construed to preclude EEOC and/or any aggrieved individual(s) from bringing suit to enforce this Agreement in the event that the Respondent fails to perform the promises and representations contained herein. Neither does it preclude the Charging Parties nor the Commission from filing charges in the future.

2. EEOC reserves all rights to proceed with respect to matters like and related to these matters but not covered in this Agreement and to secure relief on behalf of aggrieved persons not covered by the terms of the Agreement.

3. Respondent agrees that it shall comply with all requirements of Title VII and the EPA.

4. The parties agree that there shall be no discrimination or retaliation of any kind against any person because of opposition to any practice declared unlawful under Title

VII or the EPA; or because of the filing of a charge, giving of testimony or assistance, or participation in any manner in any investigation, proceeding, or hearing under federal anti-discrimination laws.

5.  The duration of the Conciliation Agreement ("Agreement") will be 4 years.

6.  Within 7 days of executing the Agreement, Respondent and its affiliates will post EEOC's poster in conspicuous places where employee notices are posted.

7.  Within 7 days of executing the Agreement, Respondent and its affiliates will sign and conspicuously post the attached Notice to Employees on all employee bulletin boards for the duration of this Agreement.

7.  The Commission may monitor compliance with this Agreement by inspection of the Respondent's premises, records and interviews with employees at reasonable times. Respondent agrees to make available for inspection and copying any records reasonably related to any of these areas, upon notice by the Commission.

8.  In the interest of a successful conciliation, the EEOC is transmitting the attached conciliation demands for equitable and compensatory relief communicated by the representatives of the Charging Parties.

Any conciliation agreement arrived at must be reduced to writing, signed by an authorized representative of the Respondent and, to be effective, must be signed by the Commission's District Director.

We request that by April 17th, 2015, Respondent provide a written counter-proposal responding to each item in the Commission's conciliation proposal and the attached Proposed Recommendations, or advise the Commission if Respondent is not willing to conciliate this matter. If Respondent does not provide a reasonable written counter-proposal by that date, the Commission may deem that further efforts to conciliate this matter would be futile, and may fail conciliation. The Commission will be fair and flexible in considering any reasonable counter-proposal that Respondent presents.

I look forward to your timely response. If you have any questions, please feel free to contact me at (212) 336-3771.

Sincerely,

_____  Apr. 1, 2015

Charles Diamond
Federal Investigator
U.S. Equal Employment Opportunity Commission
New York District Office

CWA 1180 v. Bloomberg, et al – 520-14-608, 520-15-712

## PROPOSED RECOMMENDATIONS
### Seniority Step Process to Ensure Proper Increases in Pay

**Issue:** Those entering the Administrative Manager (AM) title are qualified under civil service rules to perform the duties of that title. Yet, because of structural and historic problems which exponentially impact the Administrative Manager title, including both the suppressed minimum rate of pay, and the lack of structured pay increases, Administrative Managers, who are overwhelmingly women and non-white, perform with excellence in the title, over a period of decades but are still making the minimum or near minimum rate of pay. This rate of pay is much less than their white male counterparts in similarly situated jobs and titles. Conversely, in positions in which there is a greater percentage of white and male workers, this type of annual step process is routine.

**Solution:** Require an annual step process with the initial increase in pay of eight percent (8%) above their gross pay, including additions to growth, upon promotion and/or implementation of this policy, whichever comes first. Thereafter, an annual increase of three percent (3%) in the same manner.[1] Further, this step process must apply to lower positions that promote to AMs, such as Principal Administrative Associates, to ensure lower positions are properly integrated into the AM title. Without this, the City could find ways to cut out the position by among other things, circumventing promotions to the position of AM, reclassifying AMs to other titles, and ultimately making the AM title obsolete instead of recognizing the newly corrected and increased rate of pay for AMs.

### Increase in Minimum Salary for Administrative Managers

**Issue:** When the City established the managerial pay plan in 1978, they set the AM minimum at $24,000. Those holding the AM title at that time were overwhelmingly white and male. As women of color were promoted entering the AM title, the minimum was suppressed while white male incumbents received substantial increases because of the raised maximum, while suppressing the minimum for newly appointed women of color.

**Solution:** Increase the minimum salary to $92,117, which is the same minimum as that in 1978 when the position was white and male dominated, but adjusted to the 2014 CPI.[2] Other methods to determine the minimum salary further confirm this number is adequate and equitable. For example, had the AM minimum kept pace with collective bargaining increases paid to subordinates of AMs it would be $91,137 as of April 2015. Had the AM minimum increased at the rate of the AM maximum it would be over $113,943.85 as of September, 2014.

---

[1] This percentage rate is based on the New York State Department of Civil Service's step rate increase for NYS civil servants which is 3% annually.

[2] The NY Metro CPI-U increased 192.43 points or 283.82% since 1978 (from an annual 67.80 in 1978 to an annual 260.23 in 2014, base 1982 = 100). An annual salary of $24,000 in 1978 increasing at the same pace would be $92,117 in 2014.

In addition, according to the statistical regression analysis, if the rate of pay were raised to $92,845, it would remove the discriminatory pay disparity based on race and gender.[3]

## Proper Oversight, Opportunity & Enforcement of Equal Employment

**Issue:** Reclassification. The disparate impact CWA 1180 seeks to remedy has evolved over decades due to civil service classification processes and historic collective bargaining practices that have provided male dominated titles greater opportunities for advancement and larger increases of pay.  For example, the civil service practice of frequent examinations for male dominated uniformed services (usually every 4 years) increases opportunities for promotions in these titles while civilian promotional examinations like administrative manager were offered about once a decade.

**Solution:** Require mandatory examinations no less frequently than every four (4) years.

**Issue:** Proper Monitoring. Civil service reclassification was used in the mid-1980's to eliminate dozens of AM positions preserving them for whites and males in other titles who had not passed the test when the largest group of women of color were tested and were found qualified for the position. CWA's concern is that work that should be done by AMs will be shifted to other titles to avoid paying AM's women of color a fair wage.  Any remedy that does not address the structural causes outlined in the complaint and discussed here will only allow disparate impact to return. There is a need to have accessible records and reports that offer transparency to the City's civil service and collective bargaining practices and the impact of this on protected classes. The City's inability after significant time, to produce basic statistical information, in violation of Title VII, regarding race and gender, makes clear that the City must improve its recordkeeping management.  But beyond this, there must be someone who can be relied on with the authority to respond more quickly to problems when they come up.

**Solution:**  Require annual reporting of EEO statistical information to CWA 1180.  The City should appoint an entity or agency responsible for providing annual disclosures of statistical information required under recordkeeping requirements of both 29 C.F.R. § 1602.7 and Title VII: 42 U.S.C. § 2000e-8(c), and be responsible for providing them to CWA 1180.  Further, require that the City appoint an EEO Monitor to ensure compliance with corrective actions and to prevent future adverse impact. Such a Monitor shall be empowered with all the rights and authority necessary to access relevant information to review and approve requests for reclassification of titles, review all practices related to pay and promotion of titles, determine if there is a failure to recognize levels within a title, modifying job specifications, and/or creating new titles and/or contracting out jobs which could result in the diminishing of opportunities for equal pay.  The EEO Monitor shall also be charged with reviewing titles to ensure there is not an adverse impact in pay and/or promotion practices. Further the EEO Monitor shall ensure the outlined remedies herein are instituted, that the City does not attempt to circumvent these corrective actions, and that other adverse impacts do not occur. In the event the EEO Monitor determines that there is or could be a violation of these remedies and/or that an adverse

---

[3] This is based on the statistical reports submitted which show an increase from the $53K to $92,845 would bring the gender differential in just under statistical significance (1.95 sd).

impact is or could be present, they are required to convey this concern to the EEOC for proper investigation and resolution.

**Issue:** Career paths with clear job descriptions.  There are eight (8) levels in the managerial pay plan, an AM can be appointed to any level at the discretion of the hiring authority. The union represents the first two (2) levels in the AM title. In past practice, the City had refused to recognize even the two levels within the AM title.  This further collapsed opportunities for pay promotion causing additional adverse impact to the title comprised mostly of women and people of color.  Further, the City does not have any clear job descriptions that distinguished one level from another.  Nor does the City explain how someone in level one could move up to level two, three, five, or eight. It all remains at the discretion of the hiring authority and a mystery to the AM.

**Solution:**  Require clear job descriptions for each level, a posting and bidding process with clear selection criteria and pathways AMs may follow to advance up the career ladder.

**Issue:** Training and development.  Equal access to training is important in the ever-changing work environment. Except for programs offered by their union there is limited access for women of color in civil service to learn new skills and obtain the knowledge and academic credentials they need to move up the career ladder and effectively compete with their white male colleagues in the workplace.  By offering educational opportunities members of CWA 1180, who are predominantly women of color, the City levels the playing field and increases equal employment opportunities.

**Solution:** Require the City to match the tuition assistance made by CWA 1180 for the programs it offers to its members at the City University of New York's Murphy Institute.

### DAMAGES

**Back Pay**                                                                                    **$188,682,531**
Equal Pay claims are calculated herein based on the Administrative Staff Analysts title as the outside comparator. Calculation of disparate pay difference based on race and gender within the AM title is based on the statistical regression analysis previously submitted.  Back pay is calculated for a period of three (3) years for race, and six (6) years for gender.[4]

---

[4] While under Title VII, parties may recover back pay for a total of three years, under New York's Equal Pay Law, N.Y. C.L.S. Labor § 194, parties may recover back pay for a total of six years. *See Patrowich v. Chemical Bank*, 98 A.D.2d 318 (1st Dept. 1984). The back pay total of $188,682,531 stated here is divided up into the following: $175,605,444 for equal pay under New York's Equal Pay Law for a six-year period; $8,028,456 for race discrimination having a disparate impact on those within title; and $5,048,631 for back pay based on gender discrimination having a disparate impact on those within title. All figures are based on the statistical regression analysis, previously submitted in this matter.

**Future Pay**                    Per worksheet, no less than $92,117

Administrative Managers' salary will be increased to the Minimum Salary of $92,117 or the Adjusted Salary using the attached Future Pay Worksheet, whichever is greater. The City shall make appropriate adjustments to members' pension benefits, in accordance with this increase.

**Compensatory Damages under Title VII**             $56,922,000

The substantial delays by the City in responding to the instant matter coupled with additional delays and retaliatory action when Claimant attempted to resolve these issues in collective bargaining as early as 2011 have caused significant and unnecessary hardship to members. Members who have worked decades in the Title were required to borrow from their pension to cover the cost of food and housing, even the most senior in this top level position. Others had to go without necessities like medical procedures not covered under their health insurance, vacation, or educational opportunities. Many have retired without ever seeing the benefits of the increase in pay, and all have had to endure suppressed wages for a prolonged period of time due to the City's refusal to take this matter seriously and act to remedy or even respond to this complaint timely. Further, had the City properly maintained records in accordance with its obligations, it could have very likely prevented much of this hardship. Title VII provides for compensation of up to $300,000 per complaining party. The prevailing position of the Courts is that in matters such as this in which there are multiple complaining parties, each parties' individual cap is $300,000, and is not aggregate.[5] Given this cap and the complaining parties' compensatory damages outlined here, one (1) year of the minimum salary, that is $53,000 per member, seems a reasonable and fair amount to cover compensatory damages.

**Legal Fees and Costs under Title VII**           Per Lodestar, no less than $1,000,000

**Punitive Damages under Title VII**             Waived if matter can be settled

---

[5] *See* 42 U.S.C. § 1981a; *contra Hudson v Reno*, 130 F.3d 1193 (6th Cir. 1997) *but see Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545 (10th Cir. 1999); *Martini v. Fannie Mae*, 336 U.S. App. D.C. 289 (App. D.C. 1999); *Gotthardt v. AMTRAK*, 191 F.3d 1148 (9th Cir. 1999); *United States EEOC v. W & O Inc.*, 213 F.3d 600 (11th Cir. 2000); *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495 (7th Cir. 2000). The City engaged in retaliatory action against CWA 1180 when CWA 1180 attempted to negotiate a fair wage for AMs and the correct the inequities complained of. *See CWA, L. 1180*, 6 OCB2d 31 (BCB 2013) (IP) (Docket No. BCB-3082-13). The City's Office of Collective Bargaining determined that the City was not bargaining in good faith when it filed a complaint against CWA 1180 for alleging the discriminatory practices outlined in this matter, and ruled in favor of CWA 1180, concluding that CWA 1180 had an absolute right to grieve claims of discrimination.



# THE
# KURLAND
## GROUP

ATTORNEYS AT LAW

November 19, 2014

<u>**VIA HAND DELIVERY**</u>
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004



Re:   <u>Local 1180, Communications Workers of America AFL-CIO, et al v.</u>
      <u>City of New York, et al</u>

To Whom It May Concern:

Enclosed please find an original copy of a Supplemental Complaint that this office is filing on behalf of Local 1180, Communications Workers of America AFL-CIO, individually and on behalf of its members, along with Jane Doe Administrative Managers #1-1000, Jane Doe Former Administrative Managers #1-1000 and similarly-situated individuals, in the above referenced matter against the City of New York and related parties.

The enclosed Complaint supplements the previous Complaint filed on December 5, 2013 and assigned Charge No. 520-2014-00608 on February 4, 2014.

This Supplemental Complaint charges that Respondents are in violation of Title VII of the Civil Rights Act of 1964, in specific 42 U.S.C. §2000e-8, which states in pertinent part, "Every employer...shall make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed."

In specific, for a period of nearly a year, Respondents have failed to provide Claimants with records which they are required to maintain and make available to ensure that claims of unlawful employment practices may be properly investigated and to take measures to prevent discrimination. Respondents have claimed these records do not exist and/or that they are too disorganized to access, either or both of which would be a violation of the law.

160 BROADWAY
EAST BLDG · 11TH FL.
NEW YORK, NY 10038

P: 212 253 6911
F: 212 614 2532

KURLANDGROUP.COM

YETTA G. KURLAND
kurland@kurlandassociates.com

ERICA T. KAGAN
kagan@kurlandassociates.com

ZACHARY ALBRIGHT WHITING *
whiting@kurlandassociates.com

* admitted for practice in New Jersey

Enclosed please find further details related to this charge and specifics as to the delays, cost and hardship it has caused Complainants.

We write to request that the EEOC incorporate the enclosed Supplemental Complaint into Charge No. 520-2014-00608 and to take action to ensure Respondents are in compliance with the law and to recover damages which Complainants have suffered as a result of this violation.

If you require any further information from Complainants, please contact us.

Sincerely,

Yetta G. Kurland

Enc.

CC:     (*Via First Class Mail*)
        Donna Canfield, Esq.
        Corporation Counsel
        100 Church Street
        New York, New York, 10007

EEOC Form 5 (5/01)

| SUPPLEMENTAL CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | __ FEPA<br>_X_ EEOC | |

| New York State Division of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name (*Indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| LOCAL 1180, COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, individually and on behalf of its members, along with JANE DOE ADMINISTRATIVE MANAGERS #1-1000 and JANE DOE FORMER ADMINISTRATIVE MANAGERS #1-1000 | (212) 226-6565 | N/A |

| Street Address | City, State and ZIP Code |
|---|---|
| 6 Harrison Street | New York, NY 10013 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CITY OF NEW YORK, MAYOR MICHAEL BLOOMBERG | 500+ | (212) 788-3000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 260 Broadway | New York, NY 10007 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES | 500+ | (212) 356-1000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1 Centre Street | New York, NY 10007 |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| _X_ RACE __ COLOR _X_ SEX __ RELIGION __ NATIONAL ORIGIN<br><br>_X_ RETALIATION __ AGE __ DISABILITY __ OTHER (Specify below.) | Earliest        Latest<br><br>_X_ CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

See attached Affidavit, which outlines Claimants' allegations of failure to properly maintain required records relevant to preventing and determining the occurrence of unlawful employment practices have been or are being committed, including but not limited to discrimination and retaliation based on sex, gender, and race pursuant to Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, New York City Human Rights Law and/or other related statutes.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>11/19/14<br>*Date*     *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE
-------------------------------------------------------------------x
LOCAL 1180, COMMUNICATIONS WORKERS OF
AMERICA AFL-CIO, Individually and on behalf of its
members, JANE DOE ADMINISTRATIVE MANAGERS
#1-1000, JANE DOE FORMER ADMINISTRATIVE
MANAGERS #1-1000 and similarly-situated individuals,

Claimants,

-against-

CITY OF NEW YORK, MICHAEL BLOOMBERG,
Individually and as Mayor of the City of New York, and
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES,

Respondents.
-------------------------------------------------------------------x

**AFFIDAVIT IN
SUPPORT OF
SUPPLEMENTAL
COMPLAINT**

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

      PLEASE TAKE NOTICE, that LOCAL 1180, COMMUNICATIONS WORKERS OF

AMERICA AFL-CIO (hereinafter "Local 1180"), individually and on behalf of its members,

along with JANE DOE ADMINISTRATIVE MANAGERS #1-1000, JANE DOE FORMER

ADMINISTRATIVE MANAGERS #1-1000 and similarly-situated individuals (collectively

"Claimants"), who filed a Complaint with the Equal Employment Opportunity Commission

(EEOC) on December 5, 2013 alleging discrimination and retaliation on the basis of sex, gender,

and race, hereby further complain of the Respondents as follows:

1.      On December 5, 2013, Claimants filed a Complaint with the EEOC alleging that Administrative Managers have been subjected to a pattern or practice of discrimination in the terms, conditions, benefits and privileges of their employment by the Respondents, the City of New York, Mayor Michael Bloomberg, and Department of Citywide Administrative Services (DCAS) (hereinafter, collectively "Respondents"), based upon the sex, gender and/or race of Administrative Managers.

2.      Claimants further alleged that Respondents have limited, segregated, and/or classified Administrative Managers in a way which has deprived them of employment opportunities and/or otherwise adversely affected their status as employees, because of their sex, gender and/or race, especially when compared to other titles in City employment whose employees perform the same or substantially the same work to that of Administrative Managers and, upon information and belief, are paid higher salaries (hereinafter referred to as "Comparators").

3.      Finally, Claimants alleged that Respondents had knowledge of these practices and their impact on Claimants and did nothing to prevent them, and further, when Claimants attempted to negotiate correction of the foregoing, Respondents not only failed to take corrective action, but instead retaliated against Claimants.

4.      In the course of bringing these claims and as early as December of 2013 and earlier, Claimants attempted to secure relevant data including records which Respondents are required to maintain under federal laws and regulations, including but not limited to 42 U.S.C. §2000e-8; 29 C.F.R. §§1602.30-1602.38; 29 C.F.R. Part 516; and 29 C.F.R §1620.32, related to the race and gender data for its members and outside Comparators.

5.     However, instead of turning this information over in a timely manner, Respondents have advised Claimants through their attorneys that Respondents have failed to properly maintain the records necessary to, among other things, determine whether unlawful employment practices have been or are being committed, as Claimants have alleged.

6.     Upon information and belief, Respondents have either failed to retain and/or failed to properly maintain, to the point where they are unable to properly access them or effectively utilize, records regarding the names, job titles, city start date, title start date, salary, race, and gender for Administrative Managers and their Comparators.

7.     Despite Respondents' obligation under the law to maintain such information (*see, inter alia,* 42 U.S.C. §2000e-8; 29 C.F.R. §§1602.30-1602.38; 29 C.F.R. Part 516; and 29 C.F.R §1620.32), Respondents first claimed that they did not have this data. Then, as a basis for their failure to respond to Claimants' allegations after substantial delays, Respondents claimed that they did not maintain this data in an organized or accessible enough manner to be able to produce it without substantial delays. Respondent has still not produced this data despite Claimant having waited for nearly a year.

8.     Respondents are obligated to maintain this data to ensure that claims of unlawful employment practices may be properly investigated and to take measures to prevent discrimination. Despite this requirement, and despite the fact that nearly a year has passed since Claimants' initial EEOC Complaint was filed, during which time Claimants have made multiple requests for this data, Respondents have failed to produce this data, including but not limited to the sex, gender, and race of Administrative

3

Managers and/or their Comparators.

9.        In October 2013, Claimants filed a FOIL request to the Department of Citywide Administrative Services ("DCAS"), which is responsible for maintaining City-wide EEO, requesting the production of race and gender information as well as information regarding salary and time in title, etc. DCAS failed to produce anything and Claimant submitted a second FOIL request to DCAS requesting, *inter alia*, race and gender information for Administrative Managers and their Comparators. DCAS did not acknowledge receipt of the FOIL until July 18, 2014, and to date has not provided race and gender information for any of the titles requested.

10.       DCAS claimed that this information was maintained by the Office of Payroll Administration ("OPA"), therefore on August 25, 2014, Claimants submitted yet another FOIL request to OPA seeking the same information requested from DCAS, including, *inter alia*, Roster Reports and race and gender information for Administrative Managers and their Comparators. OPA, which is responsible for maintaining the City's payroll policies and procedures, confirmed receipt of the FOIL on August 29, 2014, but informed us that they did not maintain this information and could not provide it. OPA provided an additional response on October 6, 2014, but still failed to provide race and gender information, providing instead simply a list of Administrative Manager and their Comparators from 2009 to present.

11.       On August 6, 2014, after DCAS made it clear that it would be unable to provide the required information, Claimants submitted a FOIL request to the New York City Law Department ("Law Department"). In addition to the information Claimants sought from DCAS, Claimants also asked the Law Department to provide any

information it had gathered from various City agencies in response to our December 5, 2014 EEOC Complaint.

12.     The only data that Claimant has been able to gather has been through its own members or in bits and pieces from the collective bargaining discussions Claimant is in with City. This information however, is still severely deficient and has take almost a year to gather. At this rate, Claimant will not be able to process its claims in a timely manner.

13.     As such, regardless of whether Respondents have simply not retained this information or have not properly maintained it in a way that allows them to manage and produce it, Respondents have violated the law, including but not limited to Title VII of the Civil Rights Act of 1964, in specific 42 U.S.C. §2000e-8 and 29 CFR Part 1602; and the Fair Labor Standards Act, in specific 29 C.F.R. Part 516 and 29 C.F.R §1620.32.

14.     As a result of these violations, and Respondents' significant delays, Claimants have been forced to continue to endure the adverse impacts of this discrimination, in specific, unfair and reduced pay based on gender and race. While we understand that an investigation of claims like those filed by Claimants takes time, these recordkeeping requirements exist independently, and Respondents' breach of its duties to maintain these records unfairly and adversely impacts the chances of a proper investigation of the underlying claims. Claimants and its members, many of whom struggle to make ends meet because of these unfair pay practices despite having given their entire professional lives to the Respondents, must be provided with the protections outlined in Title VII of the Civil Rights Act of 1964 including the reliance on Respondents, a major municipality, to comply with proper recordkeeping to safeguard against discrimination. One has to wonder had Respondents properly maintained these records if some of Claimants'

damages could have been avoided.

15.       Claimants have repeatedly tried to work with Respondents to arrange access

to these records, but Respondents have refused to cooperate and we now have no choice

but to file this Supplemental Complaint.

Dated: November 19, 2014
        New York, New York

                                          By: Arthur Cheliotes, President
                                          Local 1180, Communications Workers of America
                                          AFL-CIO

Sworn to before me this 19TH
day of November, 2014

Notary Public
YETTA G. KURLAND
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01KU6035642
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 07/09/30

RECEIVED
NOV 19 2014
EEOC-NYDO-CRTIU

6



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY  10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

**EEOC Charge No: 520-2015-00712**

Arthur Cheliotes                                    **Charging Party**
CWA Local 1180
6 Harrison Street
New York, New York 10013

v.

City of New York                                    **Respondent**
Department of Citywide Administrative Services
1 Centre Street
New York, New York 10007

## DETERMINATION

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

The Respondent is an employer within the meaning of the Title VII and all requirements for coverage have been met.

The charge is bought by Arthur Cheliotes, president of Local 1180 of the Communications Workers of America, AFL-CIO ("Union"), on behalf of a class of African American and Hispanic women currently or formerly employed as Administrative Managers in agencies of the City of New York ("Charging Parties"). The Union on behalf of the Charging Parties alleges that on December 5, 2013, they filed a charge (520-2014-00608) with the Commission alleging a discriminatory pattern of wage suppression, subjective promotion, and disparate impact, because of Charging Parties' sex, race, and national origin. In the process of bringing this charge, the Union claims to have made multiple attempts to retrieve employment records of Administrative Managers and their comparators, as has the Commission. The Union claims that Respondent's failure to provide the relevant requested information demonstrates that Respondent is in violation of their duty to properly maintain employee records necessary for an investigation brought under Title VII.

Respondent is the City of New York's Department of Citywide Administrative Services (DCAS), representing the City and its agencies.  Respondent provided no response to this charge, nor did Respondent provide the relevant information requested under the previous (520-2014-00608) charge of discrimination.

Title VII requires employers to maintain employment records responsive to a charge of discrimination.  Evidence was requested from the Respondent relevant to a charge of discrimination, but none was provided. Respondent was specifically informed on December 11, 2014, that it risked an adverse determination if it did not respond on or before January 5, 2015. On February 27, 2015, Respondent formally declined to provide the requested relevant information.

Because the Respondent has been afforded an opportunity to provide an appropriate response to the charge of discrimination and has failed to do so, the Commission determines that the silence is an admission of the allegations in the charge, and exercises its discretion to draw an adverse inference with respect to the allegations. The Commission concludes that anything that Respondent could submit would not support its position.

Based on the above evidence, the Commission has determined that there is reasonable cause to believe that Respondent has failed to maintain records are required by Title VII.

This determination is final. Title VII requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion.  Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter.  Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with Title VII and the Commission's Procedural Regulations.  The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

Kevin J. Berry
District Director

*April 1, 2015*
Date

cc: Yetta G. Kurland
    The Kurland Group
    160 Broadway East Bldg, 11th Floor
    New York NY 10038

cc: Donna A. Canfield,
    Assistant Corporation Counsel
    NYC Law Department
    100 Church Street
    New York, NY 10007

2

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY  10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3630
General FAX: (212) 336-3625

In the matter of:                                          Charge No: 520-2015-00712

Charging Party
Arthur Cheliotes
CWA Local 1180
6 Harrison Street
New York, New York 10013


v.


Respondent
City of New York
Department of Citywide Administrative Services
1 Centre Street
New York, New York 10007

## CONCILIATION AGREEMENT

An investigation having been made under Title VII of the Civil Rights Act of 1964, as amended, (Title VII), by the U.S. Equal Employment Opportunity Commission (EEOC) and reasonable cause having been found, the parties do resolve and conciliate the matter as follows:

1.  The class of Charging Parties agrees not to sue the Respondent with respect to any allegations contained in the above-referenced charge.  EEOC agrees to neither use the above-referenced charge as the jurisdictional basis for filing a lawsuit against the Respondent, nor refer such a charge to the Department of Justice for consideration of a lawsuit.  However, nothing in this Agreement shall be construed to preclude EEOC and/or any aggrieved individual(s) from bringing suit to enforce this Agreement in the event that the Respondent fails to perform the promises and representations contained herein. Neither does it preclude the Charging Parties nor the Commission from filing charges in the future.

2.  EEOC reserves all rights to proceed with respect to matters like and related to these matters but not covered in this Agreement and to secure relief on behalf of aggrieved persons not covered by the terms of the Agreement.

3.  Respondent agrees that it shall comply with all requirements of Title VII.

4.  The parties agree that there shall be no discrimination or retaliation against any person because of opposition to any practice declared unlawful under Title VII; or because of the filing of a charge, giving of testimony, assistance, or participation in any manner in any investigation, proceeding, or hearing under antidiscrimination laws.

5. The duration of the Conciliation Agreement ("Agreement") will be 4 years.

6. Within 7 days of executing the Agreement, Respondent and its affiliates will post EEOC's poster in conspicuous places where employee notices are posted.

7. Within 7 days of executing the Agreement, Respondent and its affiliates will sign and conspicuously post the attached Notice to Employees on all employee bulletin boards for the duration of this Agreement.

7. The Commission may monitor compliance with this Agreement by inspection of the Respondent's premises, records and interviews with employees at reasonable times. Respondent agrees to make available for inspection and copying any records reasonably related to any of these areas, upon notice by the Commission.

8. Respondent must provide evidence that it maintains employment records responsive to a charge of discrimination brought under Title VII; specifically, that it maintains all applications and other employment records, detailing the name, birth date, voluntarily-provided demographic data (race, sex, national origin), date of employment, title, date of title, date of termination, reason for termination, and current & historical pay data, for each employee, and that this information is maintained for at least a year after termination of each employee's employment.

Any conciliation agreement arrived at must be reduced to writing, signed by an authorized representative of the Respondent and, to be effective, must be signed by the Commission's District Director.

We request that by April 17th, 2015, Respondent provide a written counter-proposal responding to each item in the Commission's conciliation proposal and the attached Proposed Recommendations, or advise the Commission if Respondent is not willing to conciliate this matter. If Respondent does not provide a reasonable written counter-proposal by that date, the Commission may deem that further efforts to conciliate this matter would be futile, and may fail conciliation. The Commission will be fair and flexible in considering any reasonable counter-proposal that Respondent presents.

I look forward to your timely response. If you have any questions, please feel free to contact me at (212) 336-3771.

Sincerely,

_1 April 2015_

Charles Diamond
Federal Investigator
U.S. Equal Employment Opportunity Commission
New York District Office

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
LOCAL 1180, COMMUNICATIONS WORKERS
OF AMERICA AFL-CIO, Individually and on behalf of its
members, LOURDES ACEVEDO, NATHIA BELTRAN,
ADRIENNE REED, JO ANN RICHARDS, ROSEANN
SCHEMBRI, on behalf of themselves and all other similarly-
situated individuals,

                               Plaintiffs,                    Index No. 160513/2016

     -against-

CITY OF NEW YORK and DEPARTMENT OF CITYWIDE
ADMINISTRATIVE SERVICES,

                               Defendants.
------------------------------------------------------------------------X

# SUMMONS WITH NOTICE

## THE KURLAND GROUP

*Attorney(s) for*     Plaintiffs

160 Broadway - East Building, 11th Floor
New York, New York 10038
TEL: (212) 253-6911

To

Service of a copy of the within is hereby admitted.

Dated:........................................ ........

Attorney(s) for

........................................................