UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
LOCAL 1180, COMMUNICATIONS WORKERS
OF AMERICA AFL-CIO,. Individually and on
behalf of its members, LOURDES ACEVEDO,
LYNETTE ANDREWS, NATHIA BELTRAN,
ADRIENNE REED, and ROSE REEVES, on behalf
of themselves and all other similarly-situated
individuals,

                              Plaintiffs,                     Case No.: 17 Civ. 3048 (LGS)

            -against-

                                                             **FIRST AMENDED**
                                                             **COMPLAINT AND**
                                                             **JURY DEMAND**

CITY OF NEW YORK, and DEPARTMENT OF
CITYWIDE ADMINISTRATIVE SERVICES,

                              Defendants.
-------------------------------------------------------------x

Plaintiffs, by their attorneys, The Kurland Group, 160 Broadway, East Building,

11th Floor, New York, NY 10038, complaining of the Defendants, allege:

## NATURE OF ACTION

1.          Plaintiffs Local 1180, Communications Workers of America AFL-CIO

(hereinafter "Local 1180"), Individually and on behalf of its members, Lourdes Acevedo,

Lynette Andrews, Nathia Beltran, Adrienne Reed, and Rose Reeves, on behalf of

themselves and all other similarly-situated individuals, (hereinafter collectively the

"Named Plaintiffs" or "Plaintiffs") bring this action against Defendants City of New York

(hereinafter "City") and Department of Citywide Administrative Services (hereinafter

"DCAS," and collectively "Defendants") to secure injunctive and monetary relief from

discrimination on the basis of sex and race based on Defendants' employment practices.

1

2.          Plaintiffs allege that Defendants through their acts and omissions have intentionally, knowingly and/or negligently and recklessly caused discriminatory treatment and effects against them and members of the class they represent by paying them wages substantially lower than the wages paid to white and male employees for the performance of substantially equal work in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, the Equal Pay Act of 1963 (hereinafter "EPA"), as amended, 42 U.S.C. §206, *et seq.*, the New York State Equal Pay Law (hereinafter "NY EPL"), N.Y. Labor Law §§ 194 *et seq.*, the New York State Human Rights Law (hereinafter "NYS HRL"), New York Executive Law §§290, *et seq.*, the New York City Human Rights Law (hereinafter "NYC HRL"), Administrative Code of the City of New York §§8-101, *et seq.*, Civil Rights Act of 1871, 42 U.S.C. § 1981, *et seq.* (hereinafter §1981), and Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.* (hereinafter §1983).

## JURISDICTION

3.          This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 42 U.S.C. § 2000., 28 U.S.C. § 1331, 42 U.S.C. § 206, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

4.          This Court may exercise supplemental jurisdiction over Plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367.

5.          Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)(2), as Defendants reside in this district and the events giving rise to Plaintiffs' claims occurred in this district.

## PLAINTIFFS

6.       Plaintiff Local 1180 represents more than 8,000 women and men who work in agencies of the City of New York, including but not limited to approximately 1,250 individuals currently employed in the Civil Service unionized title of Administrative Manager Non-Managerial (hereinafter "Administrative Manager NM") and approximately 500 additional individuals who were employed as an Administrative Manager NM in the last three (3) years.  Local 1180 is an affiliate of the Communications Workers of America (CWA) with offices at 6 Harrison Street, New York, New York 10013.

7.       Plaintiff Lourdes Acevedo has been employed by the City of New York for thirty-four (34) years, and as an Administrative Manager NM since 2011. She currently works at The Department of Transportation.

8.       Plaintiff Lynette Andrews has been employed by the City of New York for twenty-five (25) years, and as an Administrative Manager NM since 2010. She currently works at New York City Housing Authority.

9.       Plaintiff Nathia Beltran has been employed by the City of New York for twenty-four (24) years, and as an Administrative Manager NM since 2010. She currently works at The Department of Parks and Recreation.

10.      Plaintiff Adrienne Reed was employed by the City of New York for forty-seven (47) years, and retired in 2016 as an Administrative Manager NM.

11.      Plaintiff Rose Reeves has been employed by the City of New York for thirty-three (33) years, and as an Administrative Manager NM since 2011. She currently works at New York City Department of Housing Preservation and Development.

## DEFENDANTS

12.     Defendant City of New York (hereinafter "City") is a municipality duly incorporated under the laws of the State of New York and maintains its principle place of business at 260 Broadway, New York, New York 10007.

13.     Defendant Department of Citywide Administrative Services ("DCAS") is an agency of the City of New York and is responsible for administering, testing, placement, and determining compensation of employees in the title of Administrative Manager NM.  DCAS maintains its principle place of business at 1 Centre Street, New York, New York 10007.

## PROCEDURAL BACKGROUND

14.     On April 8, 2009, after nearly a decade of seeking representation of the Administrative Manager title, Local 1180 prevailed in certifying the title of Administrative Manager NM to begin collective bargaining.  In so holding, the City recognized, after years of testimony, that positions held by Administrative Managers NM require substantially the same duties and functions and are entitled to collective bargaining.

15.     After complaints were raised by individual members holding the title claiming unfair pay disparities based on race and gender, and upon review of these employees' salaries and work histories as compared to their white male counterparts, and after analyzing statistical information regarding both current pay rates and past pay rates for these and other positions considering the statistical significance of race and gender in pay differences, Local 1180 found that there was evidence that the City had engaged in a pattern and/or practice of wage suppression in segregated job titles, such as Administrative Manager NM, and had further engaged in other disparate pay practices that had adversely

4

impacted women and non-white Administrative Managers NM.

16.     As such, Local 1180 filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 5, 2013, which is incorporated herein, alleging violations of Title VII, the New York State Human Rights Law, New York City Human Rights Law, EPA, NY EPL, §1981, and §1983 (**Exhibit A**).

17.     During the EEOC's investigation of the Charge of Discrimination described above, the City initially refused to provide relevant data, claiming that it did not possess or maintain the data necessary to either substantiate or rebut the allegations included in the Charge of Discrimination, despite its legal obligation to do so and then saying production of such data would be too time consuming and difficult to produce. As such, it was Plaintiffs' position that either explanation for failure to produce this data amounted to independent violations of the City's record-keeping obligations under Title VII and FLSA, Local 1180 thereafter filed a supplemental Charge of Discrimination with the EEOC on November 19, 2014 (**Exhibit B**).

18.     On April 1, 2015, after conducting an investigation of the claims in both of these Charges, the EEOC issued a determination of reasonable cause to believe that Defendants violated the EPA and Title VII and therefore requiring wage increases and back pay in this matter in order for the City's pay practices and record-keeping to come into compliance with the law (*See* **Exhibits C-D**).  However, despite this determination and Defendants' knowledge of this ongoing problem, the City refused to enter into a Conciliation Agreement with Plaintiffs regarding the EEOC's findings, and as such, the EEOC referred Plaintiffs' Title VII claims to the United States Department of Justice (hereinafter "DOJ") for consideration (*See* **Exhibit E**).

19.     This is not the first time claims of discriminatory pay practices such as the ones asserted in this action have been made against Defendants.  This action is a culmination of a longstanding problem in the City's workforce that has been left untreated. Rather than take advantage of the numerous opportunities to solve this problem, Defendants who claim to want to address this issue, continue to refuse to take any meaningful steps to do so.

20.     The City's own Council has called for action to address these unfair pay practices.  In April 2015, after hearing testimony regarding the detrimental effects of the City's systemic problem of pay inequality, the New York City Council adopted Resolution 0649-2015, which recognized the need for strict legislation to help prevent pay inequality (**Exhibit F**).

21.     In April 2016, the New York City Public Advocate issued a report regarding the "persistent inequity in pay and opportunity in the municipal workforce" and the urgent need to take the steps necessary to close the gender wage gap in New York City's workforce (**Exhibit G**, Policy Report: Advancing Pay Equity in New York City, New York City Public Advocate Letitia James).  This report highlighted not only the pay inequality Plaintiffs in specific face, but also the EEOC's determination of reasonable cause to believe that Defendants' pay practices violated the EPA and Title VII with regard to Administrative Managers NM.  It further included the Public Advocate's pledge to investigate this problem (**Exhibit G**, p.11).

22.     Data obtained through a regression analysis of pay disparity within the title revealed that in 2013, at the time of Plaintiffs' EEOC filing, white male Administrative Managers NM made over $6,000 more annually than their non-white female counterparts,

even after controlling for variables such as time in title. By 2015, the time during which the EEOC was actively investigating and ultimately issued its Determinations that the City's pay practices violated the law, that disparity had more than doubled to over $14,000. In 2016, this pay gap again increased to an approximately $16,000 difference between white male Administrative Managers NM and non-white female Administrative Managers NM. This reinforced Plaintiffs' position that Defendants were on notice, had opportunity and incentive to correct this problem, yet did nothing. In fact, the problem got worse. (*See generally,* **Exhibit H,** Regression Analysis Report).

23.     While the Department of Justice continued its investigation of Plaintiffs' Title VII claims, Plaintiffs initiated the instant matter in State Court, separate from their Title VII claims, which they reserved their right to include at a future time.

24.     Plaintiffs filed a Summons with Notice in New York County Supreme Court on December 14, 2016 at Index No. 160513/2016, which was served on Defendants on April 4, 2017.

25.     Thereafter, on April 21, 2017, Defendants served Plaintiffs with a Demand for a Complaint in Supreme Court, and on April 26, 2017, Defendants filed Notice of Removal to this Court, removing the instant matter pursuant to 28 U.S.C. § 1441(b).

26.     The Department of Justice has now concluded their investigation and issued Plaintiffs a Notice of Right to Sue pursuant to Title VII on May 26, 2017. (*See,* **Exhibit M**, DOJ Notice of Right to Sue). Thereafter, on July 21, 2017, the Department of Justice issued Plaintiffs a second Notice of Right to Sue for Plaintiffs' Supplemental EEOC Charge (**Exhibit B**) and subsequent determination that Defendants' had violated the record-keeping requirements of Title VII and FLSA (**Exhibit D**). (*See,* **Exhibit N**, DOJ

Second Notice of Right to Sue).

27.    The instant First Amended Complaint is filed with the consent of all parties by stipulation.

## FACTUAL BACKGROUND

28.    Historically, Administrative Managers were primarily white male employees. Over the years, however, the gender and racial composition of this title evolved, with more women and non-white individuals being hired into the title. The Administrative Manager NM title is now a non-white female-dominated title comprised of approximately 75% women – most of whom are women of color.

29.    When the Administrative Manager NM title was held primarily by white men, Plaintiffs allege that the salary ranges under the City-maintained Pay Plan for Managerial Employees ("PPME") more closely reflected the value of the job and appropriate pay rates. However, as the numbers of female and non-white employees in the title increased, Plaintiffs allege that the City stopped increasing the minimum salary, while continuing to increase the maximum salary for Administrative Manager NM. This suppressed minimum salary thereby created an environment that allowed for and encouraged the resulting discriminatory pay practices alleged herein.

30.    While the maximum salary has increased to $136,198.00 to reflect pay rate increases over the years, the minimum salary for Administrative Manager NMs has remained frozen at $53,373.00.[1] As such, an Administrative Manager NM being paid the

---

[1] The minimum salary for the Administrative Manager NM title as of April 2009, the date it was certified to be represented by Local 1180, was $53,373.00. As a result of collective bargaining, the minimum would have increased to $58,929.00 as of April 2017, however after an Impasse Panel, it was determined that "there is inequity as a result of this low minimum salary," and therefore the minimum salary instead increased to $63,929.00 as of April 2017. (**Exhibit I**, Impasse Panel Report).

minimum allowable salary for their position earned $82,825.00 less than a person being paid the maximum salary with the same title, despite the fact that Administrative Manager NMs take the same civil service exam to qualify for the same positions and operate under the same job description (**Exhibit J**, Administrative Manager NM job description).

31.     Plaintiffs assert that if the minimum salary for Administrative Manager NMs had increased in tandem with the maximum salary, the minimum salary for Administrative Manager NMs would currently be as much as $108,958.00.

32.     Further, Plaintiffs assert that the minimum salary for Administrative Manager NMs has not even been increased to adjust for standard cost of living increases. If it had, upon information and belief the minimum salary for Administrative Manager NMs would be at least $78,971.00.

33.     Plaintiffs assert that if the minimum salary increased at the same rate as the salary of the Principle Administrative Associate ("PAA") title, the position from which Administrative Manager NMs are promoted, upon information and belief the minimum salary for Administrative Manager NMs would be approximately $85,024.00.

34.     Indeed, at the time Plaintiffs filed their EEOC Complaint, Administrative Managers NM found that a person who was "promoted" from PAA Level III (the level immediately below Administrative Manager NM) to Administrative Manager NM could actually experience a decrease in pay due to Defendants' failure to implement a step process to determine annual salary for Administrative Manager NMs.[2]  This problem persists despite the fact that such a step process is routinely used for other job titles, in particular those job titles in which there is a greater percentage of white and male workers.

---

[2] A step process guarantees a certain percentage-point increase in salary upon promotion to the title.

35.      Plaintiffs further assert that this wage disparity is the result of Defendants' purposeful wage suppression in a segregated job title, which, along with a historic problem of highly subjective hiring and pay practices, has harmed employees who are non-white and female and does not allow fair compensation for comparable job performance or experience.

36.      In 2013, at the time Plaintiffs filed their initial Charge of Discrimination with the EEOC, statistical analysis performed by Stephanie R. Thomas, Ph.D. of Thomas Econometrics revealed that white male Administrative Manager NMs earned approximately $6,796 more annually than their non-white female counterparts, despite all Administrative Managers NMs performing the same or substantially the same work. Not only have Defendants failed to remedy or attempt to remedy this disparity, but further statistical analysis of data obtained in 2016, well after the EEOC had determined that Defendants' pay practices violated the law, shows that the pay disparity within the title of Administrative Manager NM has gotten increasingly more pronounced. In fact, it has more than doubled in the intervening years. Furthermore, the analysis of 2016 data shows that white male Administrative Managers NM are making an average of $15,941 more annually than their non-white female counterparts. (*See generally*, **Exhibit H,** Regression Analysis Report).

37.      Civil servants should be incentivized to seek the title of Administrative Manager NM—the highest title of the occupational group—assuming that a promotion to the highest title will bring with it commensurate compensation. Non-white female Administrative Managers NM have instead faced the perverse reality that this "promotion" is in name only and instead results in a suppressed minimum salary with no room for

advancement through either merit-based increases or further promotion.  In many cases, non-white female career civil servants in the title of Administrative Manager NM have not received any merit-based pay increases since being promoted to this title nor appropriate cost of living increases. Additionally, they are hired at the minimum rate of pay where they remain for decades.  These Administrative Managers NM have reached the highest title of their group and as such have no further opportunity for advancement in the Civil Service System while still earning sometimes half of what younger and less experienced coworkers earn.

38.     Similarly, when compared to titles in the City workforce whose members perform the same or substantially the same work to that of Administrative Managers NMs but whose only significant difference is a greater percentage of white and male employees, pay disparity pervades. One such title is Administrative Staff Analyst, who statistical analysis shows are paid higher salaries than Administrative Manager NMs despite their job duties being substantially the same, even after adjusting for factors such as time in title.  In 2016, statistical analysis of the titles of Administrative Manager NM and Administrative Staff Analysts show that Administrative Staff Analysts earn an average of $23,310 more annually than Administrative Managers NM. While their functions are substantially similar, the title of Administrative Staff Analyst—which is composed of approximately 58% women and 55% non-white individuals—is significantly more male and more white than that of Administrative Manager NM, which is comprised of approximately 75% women and 75% non-white individuals.[3] (*See generally,* **Exhibit H**).

---

[3] The title of Administrative Staff Analyst is therefore composed of a similar percentage of women as the City's workforce overall, and is 6% more white than the overall municipal workforce. *See* FY 2015 NYC Government Workforce Profile Report, p. 5, *available online at* http://www.nyc.gov/html/dcas/downloads/pdf/misc/workforce_profile_report_fy_2015.pdf, last visited May 11, 2017.

39.     The City's pay practices with regards to its Administrative Managers NM is a serious problem that has finally gained necessary attention.  As recently as April 2017, the New York City Council heard testimony wherein City officials emphasized the problem of discriminatory pay inequality in the City's workforce based on race and gender has steadily increased and recognizing the need for legislation to help remedy these problems[4].

40.     As Council Member Daneek Miller, Chair of the Labor Committee, remarked regarding pay inequity in civil service, "[EPA and Title VII violations] ha[ve] occurred even though 57% of the City's work force is female. . . They are not being compensated equitably. Women of color in particular are disproportionately hurt by the wage gap. Hispanic, black and Asian women experience a wage gap of 46%, 55%, and 63% respectively related to white males in New York City."[5] In advocating for more robust reporting requirements for pay and employment equity data, Council Member Laurie Cumbo emphasized the need for such data: "[f]or the first time we will have access to data that will clearly show the discriminatory pattern of wage suppression and subjective promotions based on sex, gender, and race. . . All of these issues are faced by female civil service workers every day. Women who have to fight for equal pay are forced to borrow from their pensions, if they have one, and have to worry about putting food on the table for their families. They express concerns over the rising cost of living and the possibility of

---

[4] See New York City Council Committee on Civil Service & Labor testimony, April 27, 2017, available online at http://legistar.council.nyc.gov/Video.aspx?Mode=Auto&URL=aHR0cDovL2NvdW5jaWxxue WMudmllYml0LmNvbS9mbGFzaC9tZWRpYV9wbGF5ZXJfNzk4Yy5zd2Y%2Fc2VydmVyPW55Yy1yd G1wLnBlZ2NlbnRyYWwuY29tJmFjY291bnQ9Y291bmNpbnNpbmNpbnNpbmNpbG55YxZ2aWRlb0ZpbGVuYW1lPU5ZQ0Mt UFYtQ0gtQ09NXzE3MDQyNy0xMzI2MDUubXA0&Mode2=Video#.WROyI-nOrWs.email, last visited May 11, 2017.
[5] Id. at 00:02:28.

becoming homeless . . . Some have serious illnesses and are unable to pay for medication. Others have reached or are past the age of retirement but cannot retire because they are in debt."[6] Such have been the experiences of Plaintiffs and Class members.

41.     Defendants have continued these practices that have adversely impacted non-white female employees, despite the fact that they had knowledge of the disparate impacts outlined herein and despite being given multiple opportunities to correct them. It is because of this that Plaintiffs are forced to seek the relief of this Court.

42.     In fact, while publicizing its willingness to address these problems, Defendant has only dug in deeper and chosen to willfully avoid its responsibilities, frustrating Plaintiffs efforts to among other things gain data to better understand the problem, and correct it.

43.     For example, in 2012 and 2013, when Local 1180 attempted to address this issue in collective bargaining in order to resolve these inequities, rather than working with the Union to correct these problems, the City in response filed an improper practice petition against the Union on February 7, 2013 for daring to raise the issue of discriminatory pay practices.  Ultimately, the City's Office of Collective Bargaining ("OCB") determined on October 23, 2013 that this action showed that the City was not bargaining in good faith when it filed a complaint against Local 1180.  OCB found that it was the City who had taken the improper action in punishing the Union for raising these concerns. See *CWA, L. 1180*, 6 OCB2d 31 (BCB 2013) (IP) (Docket No. BCB-3082-13), attached hereto as **Exhibit K.**

44.     Further, in the course of investigating these claims, Plaintiffs attempted

---

[6] Id. at 00:36:00.

to secure relevant data including records which Defendants are required to maintain under federal laws and regulations, including but not limited to 42 U.S.C. §2000e-8; 29 C.F.R. §§1602.30-1602.38; 29 C.F.R. Part 516; and 29 C.F.R §1620.32, related to the payroll, race, and gender data for Administrative Manager NMs and outside Comparators.

45.      However, instead of turning this information over in a timely manner, Defendants asserted that they had failed to properly maintain the records or that it would be too burdensome to produce the records necessary to, among other things, determine whether unlawful employment practices had been or were being committed, despite the fact that Defendants are required to maintain and produce said data. Defendants further refused to provide this necessary information even after an affirmative determination of record-keeping violations by the EEOC. **(Exhibit D.)** Plaintiffs were therefore required to engage in protracted litigation in New York State Supreme Court pursuant to CPLR Article 78 to compel Defendants to produce this data. This action took close to three years, during which time Administrative Managers NM were unable to seek redress and continued to be underpaid.

46.      Defendants are obligated to maintain and produce this data to ensure that claims of unlawful employment practices may be properly investigated and to take measures to properly remedy and prevent discrimination.  Yet they failed to do so.  Indeed, the EEOC affirmatively held that Defendants violated their record-keeping obligations under Title VII. **(Exhibit D.)** This violation further evidences Defendants' intent to discriminate. By neglecting their record-keeping obligations, Defendants willfully acted in contravention of their duty to investigate, and failed to maintain the necessary records to make such an investigation possible. As a result of these violations, and Defendants'

significant delays, Plaintiffs have been forced to continue to endure the adverse impacts of this discrimination, in specific, unfair and reduced pay based on gender and race. Defendants' breach of its duties to maintain these records unfairly and adversely impacted the proper investigation of the underlying claims and delayed resolution thereof.

47.     As a result of the foregoing, Plaintiffs allege that Administrative Manager NMs have been subjected to a pattern and/or practice of discrimination in the terms, conditions, benefits and privileges of their employment by Defendants, based upon the sex, gender and/or race of the individual members.

48.     Further, Plaintiffs allege that Defendants have limited, segregated, and/or classified Administrative Manager NMs in a way which has deprived them of employment opportunities and/or otherwise adversely affected their status as employees, because of their sex, gender and/or race.

49.     Plaintiffs allege that Defendants have had knowledge of these practices and their impact on Plaintiffs yet did not take action to correct them or prevent future consequences of these practices. Defendants have further avoided any meaningful review of Plaintiffs' claims and prevented remedial action to correct the harms these practices have had.

## FACTUAL ALLEGATIONS

50.     Plaintiffs have worked and continue to work for Defendant, City of New York, as Administrative Manager NMs. Plaintiffs' duties, and the duties of those similarly-situated, include personnel functions, clerical functions, operational functions, supervising department services and providing administrative oversight (*See* **Exhibit J**, Administrative Manager NM job description).   They perform these duties within the established

guidelines, policies, and procedures to execute their administrative work.

51.      Administrative Manager NMs employed by the City work in similar job locations under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility.

52.      The City employs approximately 1,250 Administrative Manager NMs, of which approximately 75% are female and approximately 75% are people of color.

53.      The City also employs Administrative Staff Analysts, whose job duties are also personnel functions, clerical functions, operational functions, supervising department services and providing administrative oversight (*See* **Exhibit L**, Administrative Staff Analyst job description).

54.      The City employs approximately 2,500 Administrative Staff Analysts, of which only 58% are female and 55% are people of color. This is the average percentage of male workers in the City's workforce and a higher than average percentage of white workers than the City's overall workforce.[7]

55.      Administrative Manager NMs and Administrative Staff Analysts all work in similar job locations under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility.

56.      For example, Administrative Manager NMs and Administrative Staff Analysts both manage large offices, departments, units and/or districts, including scheduling and assigning work; overseeing work; directing operations; preparing and/or administering budgets and interviewing and counseling employees.

57.      As such, Administrative Manager NMs and Administrative Staff

---

[7] *See* FY 2015 NYC Government Workforce Profile Report, p. 5, *available online at* http://www.nyc.gov/html/dcas/downloads/pdf/misc/workforce_profile_report_fy_2015.pdf, last visited May 11, 2017.

Analysts perform supervisory work requiring equivalent skill, effort, and responsibility.

58.     Administrative Manager NMs and Administrative Staff Analysts also perform operational work, including data entry and analysis; maintaining performance, time and/or inventory records; preparing and/or processing payroll; and enforcing regulations.

59.     Administrative Manager NMs and Administrative Staff Analysts use independent initiative and judgment to effectuate their administrative work.

60.     Furthermore, Plaintiffs allege that the duties and responsibilities of Administrative Manager NMs and Administrative Staff Analysts are so similar that many of these duties and responsibilities are often shared between individuals holding one of these two titles.

61.     In fact, Plaintiffs assert that employees often migrate between the two titles of Administrative Manager NM and Administrative Staff Analyst, and their duties and employees' responsibilities remain the same regardless of which title they hold.

62.     Plaintiffs allege that Administrative Manager NMs often supervise the work of Administrative Staff Analysts.   Administrative Manager NMs are also often authorized to act on behalf of individuals in the titles of Administrative Staff Analyst in their absence.

63.     On information and belief, the pay scales for Administrative Manager NMs and Administrative Staff Analysts are both determined by Defendants.

64.     Based on the results of statistical analysis, known as multiple regression analysis, which was performed by Stephanie R. Thomas, Ph.D. of Thomas Econometrics, on data provided by Defendants, there have been and continue to be disparities based on

race and gender between the compensation of similarly-situated individuals within the title of Administrative Manager NM, as well as when comparing Administrative Manager NMs to the title of Administrative Staff Analysts (**Exhibit H,** Regression Analysis Report).[8] As Ms. Thomas' report shows, these disparities between race and gender are statistically significant, which means they are not the likely outcome of chance, and these findings therefore support the conclusion that these disparities are based on discrimination on the basis of race and gender.

65.    This statistical analysis (**Exhibit H**) shows the following:

    a.  As of 2014, Defendants paid Non-white Female Administrative Manager NMs at least $8,252 per year less than similarly-situated White Male Administrative Manager NMs.

    b.  As of 2014, Defendants paid Non-white Female Administrative Manager NMs at least $30,702 per year less than similarly-situated White Male Administrative Manager NMs.

    c.  As of 2014, Defendants paid Administrative Manager NMs at least $22,802 per year less than similarly-situated Administrative Staff Analysts.

66.    This statistical analysis (**Exhibit H**) further shows the following:

---

[8] The term "similarly situated" refers to employees with the same number of years of service with the City, the same number of years in title, and who are employed in the same Agency.

a. As of 2016, Defendants paid Non-white Female Administrative Manager NMs at least $15,941 per year less than similarly-situated White Male Administrative Manager NMs.

b. As of 2016, Defendants paid Non-white Female Administrative Manager NMs at least $31,060 per year less than similarly-situated White Male Administrative Manager NMs.

c. As of 2016, Defendants paid Administrative Manager NMs at least $23,310 per year less than similarly-situated Administrative Staff Analysts.

67.     Plaintiffs' assert that one cause of the disparities outlined herein is the discretion and subjectivity inherent in the current hiring process for Administrative Managers NM. While the civil service process is meant to ensure a merit-based hiring process that looks solely to the Civil Service process including a Civil Service Exam that measures skill and expertise, and an individual candidate's credentials, experience, and fitness for service, this process is undermined by the discretion at critical stages of hiring and determination of rates of pay. This discretion is impacted by either implicit or explicit bias, which causes and perpetuates discriminatory treatment and differential pay that results in lesser pay of women and non-white individuals. Further compounding the harms of subjective compensation is the wide latitude given the discretionary actors by the minimum to maximum range applicable to Administrative Manager NMs.

68.     Plaintiffs assert that this supports the conclusion that these disparities in

compensation are evidence of affirmative discrimination on the basis of gender and race, which have not only continued but have become increasingly worse despite Defendants' knowledge of the problem.

## REPRESENTATIVE PLAINTIFFS

### *Lourdes Acevedo*

69.     Representative Plaintiff Lourdes Acevedo (hereinafter "Lourdes") is 58 years old and has worked for the City of New York in the Department of Transportation (hereinafter "DOT") since 1983.   She became an Administrative Manager on November 28, 2011 after sitting for a Civil Service Exam.   She has always received outstanding performance evaluations for her work.

70.     Despite this, however, Lourdes earns so little that she could not afford to pay for her son to attend college, and had to take her daughters out of Catholic school half way through their studies because she could not afford tuition, even though their tuition was less than $2,000 a year.  She struggles to pay for food and rent and is put in financial crisis whenever an unanticipated emergency arises.

71.     Lourdes' job duties include personnel functions, clerical functions, operational functions, supervising department services and providing administrative oversight.

72.     Lourdes asserts that in her experience, white male colleagues often bypass the civil service process and are hired provisionally at a high salary, are first to be promoted and are often paid more than non-white women from the start, even when they are less experienced.  These men are sometimes also given other perks like use of a vehicle

and cell phone access.

### *Lynette Andrews*

73.      Representative Plaintiff Lynette Andrews (hereinafter "Lynette") is 48 years old and has worked for the city for approximately 25 years.   She has been an Administrative Manager NM since 2010.

74.      Lynette has never received a negative employment evaluation, but she is still receiving the minimum salary for administrative managers. She often has to dip into her savings and she has had to borrow from her pension in order to keep up with her bills and maintain a livelihood.

75.      Lynette's job duties include personnel functions, clerical functions, operational functions, supervising department services and providing administrative oversight.

76.      Upon the 2016 retirement of the only Administrative Staff Analyst in her unit, Lynette was asked to take on this retiree's former duties in addition to her own duties and responsibilities. In return, Lynette requested a raise to reflect this new larger workload, but her request has not been granted.

77.      Upon information and belief, the Administrative Staff Analyst whose work she has taken on was earning between $85,000.00 and $89,000.00 at the time of her retirement. Lynette is now performing a substantial amount of the retiree's duties and is expected to take on the ones she has not yet inherited while continuing to perform her own duties and earning a yearly salary of substantially less.

*Nathia Beltran*

78.      Representative Plaintiff Nathia Beltran (hereinafter "Nathia") is 56 years old and has been an employee of the City of New York at the Department of Parks and Recreation (hereinafter "Parks Department") for over 24 years.  She became an Administrative Manager in 2010.  Despite her experience and skill, she continues to make the minimum salary.

79.      Nathia's job duties include personnel functions, clerical functions, operational functions, supervising department services and providing administrative oversight.

80.      Nathia often has to juggle monthly bills and had to borrow money from her pension in order to do things like purchase a used car.  At times Nathia has had to use the little money she has in savings to pay her bills and often needs to pay bills late every month to meet her mortgage payments, which she usually has to pay after the first of every month.  This adversely impacts her credit rating, which then means she has to pay higher rates on her monthly bills.  This creates a vicious cycle of poverty Nathia is trapped in despite having reached the highest position in her field working for the City of New York.

81.      Nathia has an elderly family member who lives with her and who relies on her for support.  It is already difficult making time for her fulltime job at the Parks Department while caring for her elderly family member.  But far from planning for retirement, as others her age are, Nathia says she is looking for a second job just to stay alive.  She is anxious imagining how she will be able to continue doing this, but feels she has no other option.

*Adrienne Reed*

82.     Representative Plaintiff Adrienne Reed (hereinafter "Adrienne") worked for the City of New York for 47 years. Despite her experience and skill, she retired as an Administrative Manager at age 67 in 2016 at the minimum salary.

83.     Adrienne's job duties include personnel functions, clerical functions, operational functions, supervising department services and providing administrative oversight.

84.     Adrienne feels it was clear that her white and male colleagues were more valued, higher paid and more respected in the City's workforce.

85.     She alleges that the City's discriminatory practices were so accepted that no one cared that her male supervisor was a lower title than her, that of Principal Administrative Associate (hereinafter "PAA") which is a position below Administrative Managers and was paid more than Adrienne. She says that rather than correct the situation, she was forced to provide support and do the work for this male supervisor, who would then get the credit and benefit for the position, including higher pay.

86.     When Adrienne complained that they had given a supervisory role above her to a PAA, instead of fixing the problem, the City simply made him an Administrative Manager through a provisional appointment and then gave him a 5% increase in his pay.

*Rose Reeves*

87.        Representative Plaintiff Rose Reeves (hereinafter "Rose") is 56 years old and has worked for the City in the Department of Housing Preservation and Development since 1984.  She became an Administrative Manager on November 13, 2011 after sitting for a civil service exam for which her score was the 7th highest in her agency. Despite her many years of service to the City, Rose has never earned more than the minimum salary for Administrative Manager NMs, which for many years remained frozen.

88.        Rose's job duties include personnel functions, clerical functions, operational functions, supervising department services and providing administrative oversight.

89.        During her work as an Administrative Manager NM, Rose has supervised many other employees, many of whom were men and most of whom have been paid more than her despite the fact that they have less responsibilities.  For example, when Rose's salary as an Administrative Manager NM was $53,373, she was supervising a male Administrative Staff Analyst whose salary was approximately $70,000.

90.        Therefore, Rose needed to take on multiple jobs, at times working three (3) jobs simultaneously, to support her family including her five (5) children and her husband, who has been on disability since 2001.

91.        After working for the City for over 30 years, Rose would like to retire soon however she will not be able to do so because she has not been able to save enough to retire.  She has often needed to borrow money from her pension in order to make ends meet, including paying to put her children through school.  One of the shifts Rose had to work was an overnight shift on Thursday, Friday, and Saturdays, so she had to work

through most of her weekends, which impacted her ability to spend time with her children as they grew up.

## EPA COLLECTIVE ACTION ALLEGATIONS

92.     With respect to their EPA claims, Plaintiffs bring this action on behalf of themselves and all other persons similarly situated.  The members of the class are all those employed by the City in the title of Administrative Manager NM as of the commencement of this action and at any time during the preceding three-year period. *See* 29 U.S.C. § 216(b).

93.     There are over 1,500 present and former Administrative Manager NM in the proposed class. The Named Plaintiffs, along with the class of persons that they seek to represent, have been similarly affected by Defendants' common pay policies and practices, which violate the EPA, and have all sustained substantial damages as a result of the unlawful acts of the Defendants as described herein.

94.     Common questions of law and fact exist as to the class, including, but not limited to, whether the job duties performed by Administrative Manager NM are substantially similar to those performed by Administrative Staff Analysts, such that the disparity in pay rates is unlawful.

95.     The claims of the Named Plaintiffs are typical of the claims of the class because each Named Plaintiff is a current or past Administrative Manager NM.  As such, the Named Plaintiffs possess the same interest and have suffered and/or continue to suffer the same injury as the class members they seek to represent.

96.     Accordingly, hearing the claims of the Plaintiffs together will promote

judicial efficiency.

97.     Similarly-situated former and current Administrative Manager NM are readily identifiable in order to notify them of and allow them to opt into this action pursuant to 29 U.S.C. § 216(b).

## FRCP RULE 23 CLASS ACTION ALLEGATIONS

98.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure (FRCP) on behalf of themselves and all others similarly situated.

99.     The proposed class is defined as:

> All people employed by the City in the title of Administrative Manager NM as of the commencement of this action and at any time during the preceding three-year period.

100.     The essential job duties of the Class were the same or substantially similar to Plaintiffs, and the Class was paid in the same manner and pursuant to the same policies and practices as Plaintiffs.

101.     Plaintiffs have standing to seek the relief sought as stated herein, as all Class Representatives are members of the Class they seek to represent and have been harmed by Defendants' unlawful practices and policies. The Class Representatives seek to secure relief applicable to themselves and the similarly situated Class members; such relief is properly sought in a class action as much of the necessary relief addresses systemic issues of unequal pay and discriminatory policies that have harmed all Class members and all those who will become Class members.

102.     Numerosity is satisfied pursuant to FRCP 23(a)(1), as the Class is so numerous that joinder is impracticable. The estimated Class size is no less than 1,000.

Defendants have the ability and control to ascertain an exact class size.

103.    Plaintiffs and the Class have been subject to the same unlawful policies and practices of Defendants, including discriminatory and differential treatment, discriminatory pay disparities, suppression of wages, and limitation of employment opportunities.

104.    During the time in question, Defendants were fully aware of the duties and responsibilities performed by Plaintiffs and the Class. Defendants also knew or should have known of the disparity in pay suffered by the female and non-white members of the Administrative Manager NM Title, and the consequences of suppressing the Title as a whole.

105.    Due to Defendants' conduct described and alleged herein, Defendants violated federal, state, and local laws knowingly, negligently, and without a good faith basis, causing pecuniary and emotional damages to Plaintiffs and the Class, the full extent of which are not yet known.

106.    Defendants are liable to Plaintiffs and the Class for these violations for monetary damages, including back pay, front pay, and compensatory damages, as well as equitable relief, including injunctive and affirmative relief. All relief sought is applicable to the Class as a whole.

107.    Certification of the Class's claims as a class action is the most efficient and economic means of resolving the questions of law and fact common to Plaintiffs' claims and Class claims. Failure to proceed as a class action would result in an impracticable number of individual suits seeking to resolve the same claims with the same evidence. Proceeding on an individual basis would further pose an unnecessary risk of

inconsistent adjudications. Additionally, individual Class members face a high threat of being financially unable or unwilling out of fear of retaliation to seek vindication of their statutory rights through individual claims. The interests enumerated in FRCP 23(b)(1).

108.    The Named Plaintiffs, all of whom either are or were employed as an Administrative Manager NM, raise claims typical of the claims of the classes that they seek to represent. Class Representatives pursue the same factual and legal theories as the class they seek to represent, and seek similar relief.

109.    Defendants have been and continue to be engaged in a pattern and practice of wage suppression within the title of Administrative Manager NM and patterns and practices that lead to the discriminatory and differential treatment and discrimination in pay for female and non-white Administrative Manager NM. Defendants acts and omissions have harmed and affected the Class Representatives and the Class members in substantially the same or similar ways.

110.    Defendants have failed to redress or seek to mitigate the known unlawful consequences of these policies and practices. Class Representatives and Class members have been harmed by these failures in substantially the same or similar ways.

111.    Class Representatives and Class members all seek the relief described herein.

112.    Plaintiffs' claims raise questions of law that are common to the Class including:

   a.   Appropriate standards for proving a pattern and practice
        of   discrimination   against   female   and   non-white

Administrative Manager NM on both disparate treatment and disparate impact theories of liability;

b. Whether Defendants have engaged in unlawful, systemic discrimination on the basis of race and gender through its policies, practices, and procedures in fixing compensation and discretionary employment and promotional practices;

c. Whether Defendants failed to mitigate or cure a known problem of pay inequity in the title of Administrative Manager NM;

d. Whether Defendants are liable for past and continued violations of the Equal Pay Act and/or other related statutes.

113.     Plaintiffs' claims raise common questions of fact including:

a. Whether Defendants' system, policies, and practices of compensation for individuals in the title of Administrative Manager NM is subject to appropriate standards;

b. Whether Defendants' system of discretionary pay and promotions within and outside the title of Administrative Manager NM lacks transparency and equal opportunity;

c. Whether Defendants' policies and practices of

compensation within the title of Administrative Manager NM has led to female and non-white Administrative Manager NM being systematically paid less than their male and white counterparts for substantially the same work;

d. Whether Defendants intentionally, knowingly, or willfully and/or negligently and recklessly compensated female and non-white Administrative Manager NM less than their similarly situated male and white counterparts.

114.    Plaintiffs seek relief common to the class, namely, monetary relief, including back pay, front pay, and compensatory damages, as well as equitable relief, including injunctive and affirmative relief.

115.    Plaintiffs will fairly and adequately represent and protect the interests of the classes. The interests of the Class Representatives are coextensive with the interests of the members of the proposed Class. Class Representatives seek to remedy Defendants' discriminatory practices, policies, and procedures so as to ensure equal pay for equal work, remedy past differential treatment and unequal pay, and secure equitable prospective relief so that female and non-white Administrative Manager NM will no longer face disparate treatment, unequal pay, and suppression of wages, all of which harm the entire title of Administrative Manager NM and perpetuate suppression of this title as a whole.

116.    Class Representatives are all willing and able to represent the interests of the proposed Class fairly and vigorously, as each of them would in pursuing their individual claims. Each Class Representative is prepared to assist in the instant litigation

and make informed decisions based on the interests of the proposed Class.

117.    Plaintiffs' lawyers are experienced in the litigation of civil rights matters and will vigorously prosecute this action on behalf of the class. Plaintiffs' counsel has sufficient experience and resources to litigate a class action of this size. Further, as Plaintiffs' counsel has represented Plaintiffs and the Class in all related litigation from 2013 through present, Plaintiffs' counsel is intimately familiar with the procedural and factual history of the instant matter, the factual and statistical information underlying Plaintiffs' claims, and is best positioned to litigate this class action. The experience, knowledge, and resources of Plaintiffs' counsel, together with the assistance of the Class Representatives and financial resources of Plaintiff CWA Local 1180 satisfies the adequacy requirements of FRCP 23(a)(4).

118.    Defendants have acted on grounds generally applicable to the class and appropriate injunctive and declaratory relief would apply to and benefit the class as a whole.

## FIRST CAUSE OF ACTION
## TITLE VII

119.    Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

120.    Defendant City of New York at all relevant times has been Plaintiffs' employer as defined by Title VII. Defendant DCAS at all relevant times has set the discriminatory pay practices and policies alleged herein and is a covered employer as defined by Title VII.

121.    Defendants have discriminated against Plaintiffs on the basis of race,

sex, and gender by treating Plaintiffs differently and less favorably than their similarly situated male and white counterparts in violation of Title VII.

122.    Defendants' policies and practices have caused a disparate impact on Plaintiffs with respect to the terms and conditions of their employment, including but not limited to pay practices.

123.    Defendants knowingly and willfully compensate female and non-white Administrative Manager NMs at lower rates of pay than similarly-situated male and white Administrative Manager NMs despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

124.    Defendants' conduct has been deliberate, willful, reckless, and conducted with a callous disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages.

125.    Defendants' have further shirked their obligations to maintain records necessary to investigate claims of discrimination. This violation further evidences Defendants' intent to discriminate. Defendants failure to investigate and failure to comply with record-keeping obligations imposed by law has been deliberate, willful, reckless, and conducted with a callous disregard for Plaintiffs' rights and Defendants' legal obligations.

126.    Defendants' discriminatory compensation and employment practices are ongoing and continuous, entitling Plaintiffs to the application of the continuing violations doctrine to all violations alleged herein.

127.    As a direct result of the actions and inactions of Defendants, Plaintiffs have suffered injuries and damages and continue to suffer such injuries, including but not

limited to loss of wages, salaries and benefits, as well as reputational and emotional damages, including but not limited to emotional and physical distress and mental anguish.

## SECOND CAUSE OF ACTION
## EQUAL PAY ACT

128.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

129.     Defendants knowingly and willfully compensate female Administrative Manager NMs at lower rates of pay than similarly-situated male Administrative Manager NMs despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

130.     Further, Defendants knowingly and willfully compensate individuals in the predominantly female Administrative Manager NM title at lower rates of pay than similarly-situated Administrative Staff Analysts despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

131.     The minority of males in the Administrative Manager NM title also suffer from Defendants' knowing and willful discrimination as they are also compensated at lower rates of pay than similar-situated Administrative Staff Analysts based on their employment in the Administrative Manager NM title, which has a suppressed minimum wage.

132.     The acts, practices, and policies of Defendants, as set forth above, constitute ongoing discrimination against the individual Plaintiffs and Plaintiff class in

violation of the Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.*

133.     As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

### THIRD CAUSE OF ACTION
### NEW YORK EQUAL PAY LAW

134.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

135.     Defendants knowingly and willfully compensate female Administrative Manager NMs at lower rates of pay than similarly-situated male Administrative Manager NMs despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

136.     Further, Defendants knowingly and willfully compensate individuals in the predominantly female Administrative Manager NM title at lower rates of pay than similarly-situated Administrative Staff Analysts, despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

137.     The minority of males in the Administrative Manager NM title also suffer from Defendants' knowing and willful discrimination as they are also compensated at lower rates of pay than similar-situated Administrative Staff Analysts based on their employment in the Administrative Manager NM title, which has a suppressed minimum wage.

138.     The acts, practices, and policies of Defendants, as set forth above,

constitute ongoing discrimination against the individual plaintiffs and plaintiff class in violation of the New York State Equal Pay Act, N.Y. Labor Law §§ 194 *et seq.*

139.     As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## FOURTH CAUSE OF ACTION
## NEW YORK STATE HUMAN RIGHTS LAW

140.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

141.     Defendants knowingly and willfully compensate non-white and female Administrative Manager NMs at lower rates of pay than similarly-situated white and male Administrative Manager NMs despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

142.     Further, Defendants knowingly and willfully compensate individuals in the predominantly non-white and female Administrative Manager NM title at lower rates of pay than similarly-situated Administrative Staff Analysts despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

143.     Defendants have further knowingly and willfully suppressed the minimum salary of the title of Administrative Manager NM, which has had a disparate impact on non-white and female Administrative Manager NMs.

144.     Defendants' policy and practice of compensating non-white and female Administrative Manager NMs at lower rates of pay than similarly-situated white and male

Administrative Manager NMs has a disparate impact on non-white and female Administrative Manager NMs.

145.    Further, Defendants' policy and practice of compensating non-white and female Administrative Manager NMs at lower rates of pay than similarly-situated white and male Administrative Manager NMs constitutes disparate treatment of non-white and female Administrative Manager NMs.

146.    Defendants' policy and practice of compensating Administrative Manager NMs at lower rates of pay than similarly-situated Administrative Staff Analysts has a further disparate impact on all Administrative Manager NMs.

147.    Further, Defendants' policy and practice of compensating the predominantly non-white and female Administrative Manager NM title at lower rates of pay than similarly-situated Administrative Staff Analysts constitutes further disparate treatment of all Administrative Manager NMs.

148.    Plaintiffs are members of a protected class, qualified for their position, and yet they are being treated less favorably regarding their compensation because of their gender and race.

149.    The minority of white males in the Administrative Manager NM title also suffer from Defendants' knowing and willful discrimination as they are also compensated at a lower rate of pay than similar-situated Administrative Staff Analysts based on their employment in the Administrative Manager NM title, which has a suppressed minimum wage.

150.    Defendants have knowingly and willfully obfuscated the proper investigation of Plaintiffs' claims by refusing to properly maintain and/or produce the data

required to analyze potential pay inequality.

151.     The acts, practices, and policies of Defendants, as set forth above, constitute ongoing discrimination against the individual plaintiffs and plaintiff class in violation of the New York State Human Rights Law, New York Executive Law §§290, *et seq.*

152.     As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## FIFTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW

153.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

154.     Defendants knowingly and willfully compensate non-white and female Administrative Manager NMs at lower rates of pay than similarly-situated white and male Administrative Manager NMs despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

155.     Further, Defendants knowingly and willfully compensate individuals in the predominantly non-white and female Administrative Manager NM title at lower rates of pay than similarly-situated Administrative Staff Analysts despite the fact that they work under substantially similar conditions and perform jobs substantially similar in terms of skill, effort, and responsibility within the same establishment.

156.     Defendants have further knowingly and willfully suppressed the minimum salary of the title of Administrative Manager NM, which has had a disparate

impact on non-white and female Administrative Manager NMs.

157.     Defendants' policy and practice of compensating non-white and female Administrative Manager NMs at lower rates of pay than similarly-situated white and male Administrative Manager NMs has a disparate impact on non-white and female Administrative Manager NMs.

158.     Further, Defendants' policy and practice of compensating non-white and female Administrative Manager NMs at lower rates of pay than similarly-situated white and male Administrative Manager NMs constitutes disparate treatment of non-white and female Administrative Manager NMs.

159.     Defendants' policy and practice of compensating Administrative Manager NMs at lower rates of pay than similarly-situated Administrative Staff Analysts has a further disparate impact on all Administrative Manager NMs.

160.     Further, Defendants' policy and practice of compensating the predominantly non-white and female Administrative Manager NM title at lower rates of pay than similarly-situated Administrative Staff Analysts constitutes further disparate treatment of all Administrative Manager NMs.

161.     Plaintiffs are members of a protected class, qualified for their position, and yet they are being treated less favorably regarding their compensation because of their gender and race.

162.     The minority of white males in the Administrative Manager NM title also suffer from Defendants' knowing and willful discrimination as they are also compensated at a lower rate of pay than similar-situated Administrative Staff Analysts based on their employment in the Administrative Manager NM title, which has a

suppressed minimum wage.

163.    Defendants have knowingly and willfully obfuscated the proper investigation of Plaintiffs' claims by refusing to properly maintain and/or produce the data required to analyze potential pay inequality.

164.    The acts, practices, and policies of Defendants, as set forth above, constitute ongoing discrimination against the individual plaintiffs and plaintiff class in violation of the New York State Human Rights Law, New York Executive Law §§290, *et seq.*

165.    As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## SIXTH CAUSE OF ACTION
### 42 U.S.C. §1981

166.    Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

167.    By the acts, practices, and policies described above, Defendants have deprived the individual plaintiffs and plaintiff class of their statutory civil rights secured through NYS HRL and NYC HRL based on their race in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981, *et seq.*

168.    Plaintiffs and the majority of the Class they seek to represent are non-white women, and therefore members of racial minorities.

169.    The title of Administrative Manager NM has a higher percentage of non-white employees than the average for City employees.

170.    Defendants establish the policies by which Plaintiffs are compensated, and Defendants at all relevant times maintain exclusive control over these policies. Defendants knew that their policies had the effect of unlawful pay inequity between men and women performing the same work, and that this result constituted unlawful conduct on the basis of race. Defendants nonetheless failed to remedy these policies, and instead intentionally maintained the policies, which led to the intentional perpetuation of racial discrimination in employment opportunities in violation of state and local law. Defendants knew that their actions constituted unlawful conduct on the basis of race and/or showed reckless disregard for Plaintiffs' statutorily protected rights.

171.    This discriminatory treatment concerned the terms and conditions of Plaintiffs' contractual employment with Defendants, the full enjoyment of which is secured by 42 U.S.C. § 1981(b).

172.    As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## SEVENTH CAUSE OF ACTION
### 42 U.S.C. §1983

173.    Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

174.    By the policies and customs described above, Defendants have deprived the individual plaintiffs and plaintiff class of their statutory civil rights secured by the Equal Pay Act based on their gender in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.*

175.    Defendants establish the policies by which Plaintiffs are compensated,

and Defendants at all relevant times maintain control over these policies. Defendants knew that their policies had either the intention or effect of unlawful pay inequity between men and women performing the same work, and that this result constituted unlawful conduct on the basis of gender. Defendants intentionally failed to redress these statutory violations and/or showed reckless disregard for Plaintiffs' statutorily protected rights.

176.    Defendants were the only entities capable of remedying the unlawful effects of their policies and customs, and yet failed to do so despite ample knowledge and opportunity.

177.    As a direct result of the actions of Defendants, Plaintiffs and the class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits.

## DEMAND FOR JURY

178.    Plaintiffs demand trial by jury on all issues so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grants the following relief:

A.  Designate this action as a collective action;

B.  Designate this action as a class action;

C.  Issue a Declaratory Judgment finding that Defendants discriminated against Plaintiffs in violation of the Equal Pay Act, New York Equal Pay Law, New York State Human Rights Law, New York City Human Rights Law, §1981, and §1983;

41

D. Enter a permanent injunction enjoining Defendants from further violating the Equal Pay Act, the New York State Equal Pay Act, the New York State Human Rights Law, the New York City Human Rights Law, §1981 and §1983;

E. Direct Defendants to appoint an agreed upon independent monitor to review the City's policies and practices and to initiate and enforce remedial steps to cure discriminatory hiring and pay practices based on race and gender and to further investigate enforcement of any orders of this Court with regards to equitable and curative relief and to report on its findings;

F. Award Plaintiffs back pay together with all other benefits to which Plaintiffs are entitled, with prejudgment interest;

G. Increase the minimum salary of Administrative Manager NMs to an amount commensurate with the required skill, effort, and responsibility, and no less than the minimum salaries of Administrative Staff Analysts, and any and all other comparable job titles;

H. Require Defendants to implement a step process with an initial increase of no less than eight percent (8%) above gross pay for all promotions to the title of Administrative Manager NM, and an annual increase of no less than three percent (3%) for all of those in the title of Administrative Manager NM;

I. Require Defendants to implement a policy whereby all City agencies are required to (i) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, including but not limited to employees' race, ethnicity, national origin, gender, job title, pay

range, and hours worked; (ii) preserve such records for no less than five (5) years; and (iii) submit such records annually to DCAS;

J.  Award Plaintiffs liquidated damages due to Defendants' willful and intentional conduct directed at Plaintiffs in violation of rights protected by EPA and NY EPL;

K.  Award compensative and punitive damages due to Defendants' willful and intentional acts directed at Plaintiffs;

L.  Award Plaintiffs reasonable attorneys' fees, expenses and costs of this proceeding;

M.  Such other and further relief as this Court deems just and proper.

Date:   August 21, 2017
        New York, NY

Yetta G. Kurland, Esq. (YK-1251)
THE KURLAND GROUP
*Attorneys for Plaintiffs*
160 Broadway, East Building, 11th Floor
New York, New York 10038
(212) 253-6911 (t)
(212) 614-2532 (f)
kurland@kurlandgroup.com