UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

LOCAL 1180, COMMUNICATIONS WORKERS OF
AMERICA AFL-CIO, Individually and on behalf of its
members, LOURDES ACEVEDO, LYNETTE
ANDREWS, NATHIA BELTRAN, ADRIENNE REED,
and ROSE REEVES, on behalf of themselves and all other
similarly-situated individuals,

                                      Plaintiffs,

                 -against-

THE CITY OF NEW YORK and DEPARTMENT OF
CITYWIDE ADMINISTRATIVE SERVICES,

                                   Defendants.

-------------------------------------------------------------------- X

Case No. 17 Civ. 3048
(LGS)(SDA)

**DECLARATION OF DONNA A. CANFIELD IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

      **DONNA A. CANFIELD** declares, pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

      1.  I am an Assistant Corporation Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, attorneys for the Defendants in the above-captioned action.

      2.  I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of the Proposed Class Action Settlement and Proposed Preliminary Order of Approval.

      3.  I have reviewed Ms. Kurland's declaration, and although I do agree that the proposed settlement is a fair, adequate and reasonable compromise of this action, I respectfully

disagree with certain factual assertions contained in the declaration, as well as Ms. Kurland's decision not to give a full, complete background and overview of the litigation.

## A.    Background

4.    On April 8, 2009, Local 1180, Communication Workers of America, AFL-CIO, ("Local 1180"), became the bargaining representative for employees in the title of Administrative Manager, managerial levels I and II, Title Code 10025, who were not excluded from representation as managerial or confidential employees. *See CWA, Local 1180*, 2 OCB2d 13 (BOC 2009).

5.    Following certification, the New York City Department of Citywide Administrative Services ('DCAS") created Alternate Title Code No. 1002C for all employees now represented by Local 1180, and were given the title Administrative Manager, Non-Managerial ("Admin. Manager NM").

6.    Prior to the BOC's decision to certify Local 1180 as the exclusive bargaining representative of the Admin. Manager NM job title, the Administrative Manager Managerial ("M") Levels I and II had been a managerial title, and like all managerial titles Citywide, received compensation in accordance with the Pay Plan for Managerial Employees or "PPME."

7.    On May 7, 2012, the City and Local 1180 met for their first bargaining session to discuss the incorporation of the Admin. Manager NM title into the existing contract and to negotiate minimum and maximum salary rates, among other matters. At that session, Local 1180 submitted a list of bargaining demands, one of which was to increase the minimum salary of the Admin. Manager NM title to $108,958. *See* 6 OCB2d 30 (BCB 2013) at p. 4. In support of this salary increase, Local 1180 argued that the minimum salary for employees formerly in the Administrative Manager Levels I and II title under the PPME had been "artificially suppressed,"

and that the current minimum salary of $53,373 for Admin. Manager NM was unacceptable. *Id*. at p.3.

8.   On January 23, 2013, the parties met for a second bargaining session.  In response to Local 1180's salary proposal, the City proposed a minimum incumbent salary of $53,373 per annum based on the long-standing practice that when there is no change in job duties, there is no rationale to raise salary levels.  *Id*.  Local 1180 countered that the $108,958 minimum salary proposal was based on Local 1180's attempt to rectify what it views as a longstanding practice of discrimination by the City towards those holding the Administrative Manager title, the majority of whom—according to Local 1180—are minority women.  *Id*.

9.   On February 7, 2013, the City filed an improper labor practice, alleging that Local 1180, among other things, had implied that unless the City agreed to the $108,958 minimum salary proposal, there would be no collective bargaining agreement.  *Id*.  The City argued that setting such preconditions to negotiations violated § 12-306(b)(2) of the New York City Collective Bargaining Law.

10. On June 13, 2013, Local 1180 filed its own improper practice charge, alleging that the City breached its duty to negotiate in good faith.

11. In a decision dated October 23, 2013, the Board of Collective Bargaining denied the City's petition and granted Local 1180's petition.  *See id*.; *see also* 6 OCB2d 31 (BCB 2013).

12. After resolution of the Improper Practices by decision of the Board of Collective Bargaining, the parties conducted two additional bargaining sessions on November 27, 2013 and October 15, 2014.  The parties were unable to reach settlement

13. With collective bargaining negotiations at an impasse, on or about December 5, 2013, Local 1180 filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission. ("EEOC")—individually and behalf of its Administrative Manager members currently or formerly employed by the City of New York ("City")—asserting that the City engaged in a pattern or practice of discrimination and retaliation on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e , *et al*., the Equal Pay Act of 1963, as amended, 42 U.S.C. §206, *et seq*., the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983, *et seq*., the New York State Equal Pay Law, N.Y. Labor Law §§194 *et seq*., the New York State Human Rights Law, New York Executive Law, Article 15, §290 *et seq*., and the New York City Human Rights Law, Administrative Code and Charter, §8-101 *et seq*.

14. Specifically, Local 1180 alleged that historically, the Administrative Manager title had been filled primarily with white males and that salary ranges reflected the value of the job.  As more women and minorities were appointed to the title, Local 1180 alleged that the City purposefully suppressed the minimum salary of the Administrative Managers.

15. On or about December 5, 2014, the City submitted a position statement arguing that employees holding the Administrative Manager NM title do not perform equal work, and that there were no facts in the EEOC charge to suggest discriminatory animus.

16. On April 1, 2015, the EEOC issued its determination, and based on a negative inference against the City for its failure to provide certain information requested, found probable cause that the City violated Title VII.  After conciliation efforts failed, the matter was referred to the United States Department of Justice ("DOJ").

17. In a letter dated March 7, 2016, the United States Department of Justice ("DOJ"), through the United States Attorney' Office of the Southern District of New York,

notified the City that they were undertaking an investigation into Local 1180's claims of wage suppression, subjective promotion and unlawful pay discrimination.

**B.     Overview of Litigation**

18. On April 4, 2017, Local 1180 and Lourdes Acevedo, Nathia Beltran, Adrienne Reed, Jo Ann Richards, and Roseann Schembri, individually and on behalf of its members, served the City and the New York City Department of Administrative Services ("DCAS") (collectively "Defendants") with a Summons with Notice filed in New York County Supreme on December 14, 2016.

19. On April 21, 2017, the Defendants responded by serving a Demand for a Complaint, and on April 26, 2017, filed a Notice of Removal to the District Court of the Southern District of New York.  (Dkt. #1).

20. In an effort to resolve issues in collective bargaining and the allegations of pay disparity contained in the EEOC charge filed by Local 1180, on May 2, 2017, Local 1180 and the City's Office of Labor Relations entered into a Memorandum of Agreement ("MOA"). The terms of the MOA—which established, among other things, pay levels based on assignment, a salary scheduled, and retroactive pay—was contingent upon Local 1180 "filing of a class-action lawsuit and entering into a settlement with the City consistent with the terms of th[e] MOA."

21. On May 11, 2017, Local 1180 Lourdes Acevedo, Lynette Andrews, Nathia Beltran, Adrienne Reed and Rose Reeves, individually and on behalf of its members (collectively "Plaintiffs") served a complaint, alleging claims under the Equal Pay Act, New York State Equal Pay Law, New York State Human Rights Law, New York City Human Rights Law, and Sections 1981 and 1983 of the Civil Rights Act.  (Dkt. #5).

22. On May 19, 2017, the DOJ notified the City that there were closing their investigation, and on May 26, 2017, the DOJ issued Local 1180 a Notice of Right to Sue.  On June 1, 2017, the Defendants answered the federal complaint.  (Dkt. # 8).

23. On August 21, 2017, Plaintiffs amended the complaint to add Title VII claims. On September 18, 2017, Defendants answered the amended complaint.  (Dkts. # 21, 23).

24. On April 27, 2018, Defendants requested leave of the Court to file a motion to dismiss Plaintiff Andrews from the Amended Complaint for failure to name a necessary party to the litigation, which the Court granted on April 28, 2017.  (Dkts. #40, 41).

25. On June 7, 2018, with the consent of parties, the Court referred Defendants' motion to Magistrate Judge Aaron who had replaced Magistrate Judge Ellis following his retirement.  (Dkt. #52).

26. On or about June 21, 2018, Defendants moved to dismiss Plaintiff Andrews from the Amended Complaint for failure to name a necessary party to the litigation.  (Dkt. # 54).

27. Following oral argument and review of the parties' submissions, on or about July 31, 2018, Magistrate Judge Aaron issued an Opinion and Order denying Defendants' motion. (Dkts. #52-62).

28. On February 4, 2019, the parties consented to jurisdiction by Magistrate Judge, and on February 19, 2019 disposition of the case was assigned to Magistrate Judge Aaron.  (Dkt. #91).

## C.    Settlement Negotiations

29. By letters, dated June 8, 2017 and June 9, 2017, Plaintiffs and Defendants, respectively, notified the Court that the parties had already entered into a Memorandum of

Agreement of settlement, and requested that the case be transferred to the Magistrate Judge to finalize the settlement terms.  (Dkts. # 10, 11).

30. On June 13, 2017 the Court referred the case to Judge Magistrate Ellis for settlement purposes.

31. Between June 23, 2017 and March 4, 2019, the parties engaged in multiple rounds of vigorous and contentious discussions regarding the terms and scope of the May 2, 2017 MOA negotiated between Local 1180 and the City to resolve issues in collective bargaining, as well as the claims of pay disparity alleged in the EEOC charge and the subsequent litigation.

32. The parties appeared by telephone and in person with the Court on numerous occasions from June of 2017 through February of 2019, including but not limited to on June 23, 2017, July 6, 2017, October 3, 2017, April 3, 2018, April 9, 2018, April 20, 2018, May 23, 2018, September 6, 2018, September 20, 2018, October 3, 2018, November 19, 2018, December 4, 2018, December 11, 2018, December 18, 2018, January 8, 2019, January 18, 2019, and February 26, 2019.  (Dkts. # 12, 16, 23, 34, 35, 37, 48, 70, 75, 81, 83, 84-88, 91).

33. On February 19, 2019, the Court approved parties' consent to the jurisdiction of Magistrate Judge Aaron to dispose this matter. (Dkt. #91).

34. By email, dated March 4, 2019, Plaintiffs notified the Court that a settlement had been reached.

35. Defendants support Plaintiffs' motion for preliminary approval of class settlement consistent with the terms outlined below.

D.     **Monetary Payments to the Individually-Named Plaintiffs and Class Members**

36. In addition to the equitable relief negotiated in collective bargaining, Defendants will pay the amount of five million one hundred and eighty one thousand, six hundred

and sixty eight dollars and sixty five cents ($5,181,668.65) in Back Pay to its employees who were in the title of Administrative Manager (NM) at any time from December 1, 2013 through April 30, 2017.

37. The Defendants will also pay its employees retroactive pay, beginning from October 8, 2018 through the date of payment after the Effective Date, based upon pay levels established pursuant to the May 2, 2017 settlement consistent with the assigned duties for the Administrative Manager, Non-Managerial title.

38. The Defendants will pay one thousand dollars and no cents ($1,000.00) each for the five named Plaintiffs.

39. In addition, pursuant to the terms of a side-agreement negotiated between Local 1180 and the City, the parties agreed to modify the Additional Compensation Fund as set forth in the parties' 2008-2010 Collective Bargaining Agreement.  Specifically, the parties agreed that the City will make a one-time contribution to the Local 1180 Annuity Fund in the amount of five million, five hundred forty-four thousand, four hundred dollars and no cents ($5,544,400.00), to be distributed to employees who held the title of Administrative Manager, NM during the period from December 1, 2013 through December 31, 2018, based upon length of service in title during that period of time.

40. Further, pursuant to the terms of a side-agreement negotiated between Local 1180 and the New York City Housing Authority ("NYCHA"), and with the assistance of the City ("side-NYCHA MOA"), non-party NYCHA will pay the amount of four hundred and fifty four thousand, fifteen dollars and thirty five cents ($454,015.35) to its employees who were in the title of Administrative Manager (NM) at any time from December 1, 2013 through April 30, 2017.

41. NYCHA will also pay retroactive pay starting from October 6, 2018 through the date of payment after the Effective Date based upon pay levels established pursuant to the May 2, 2017 settlement between the City and Local 1180, and consistent with the assigned duties for the Administrative Manager, Non-Managerial title..

**E.     Attorneys' Fees and Litigation Costs**

42. The Defendants will pay the amount of three hundred thousand dollars and no cents ($300,000) towards Plaintiffs' legal fees and costs incurred by the Union in pursuit of the claims filed at the Equal Employment Opportunity Commission, based on billing records submitted to the Court.

43. In addition, following a Fairness Hearing and prior to the entry of an order approving settlement, Plaintiffs' counsel will file an application to recover legal fees and costs for work done on behalf of the settlement class of not more than twenty-five percent (25%) of the Back Pay award.

44. The parties agree that Defendants will responsible for paying 91.94% of the attorneys' fees awarded pursuant to Paragraph 42 above.  The parties also agree that non-party NYCHA will be responsible for paying 8.06% of the aforesaid attorneys' fees, pursuant to the side-NYCHA MOA.

45. The Defendants also agree to bear up to twenty thousand dollars and no cents ($20,000.00) for the Claims Administrator retained by Plaintiffs.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated:          New York, New York
                April 2, 2019

                               ZACHARY W. CARTER
                               Corporation Counsel of the City of New York
                                   Attorney for Defendants
                               100 Church Street, Room 2-124
                               New York, New York 10007
                               (212) 356-2461

                        By:    ECF_____/s/_____
                               Donna A. Canfield
                               Assistant Corporation Counsel
                               dcanfiel@law.nyc.gov