USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**Local 1180, Communications Workers Of America, AFL-CIO et al.,**

                                    **Plaintiffs,**

            **-against-**

**City Of New York et al.,**

                                    **Defendants.**

---

**1:17-cv-03048 (SDA)**

**OPINION, ORDER & JUDGMENT**

---

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

Plaintiffs petition for Court approval of a proposed class settlement. Plaintiffs also seek approval of service awards to the named plaintiffs, as well as class counsel's attorneys' fees in the amount of $1,708,921.00.[1] For the reasons set forth below, the settlement is approved, the service awards are approved and attorneys' fees are awarded, albeit in a reduced amount.

## BACKGROUND

The background of this case was set forth in a prior Opinion issued by the Court, as follows:

> On December 14, 2016, plaintiffs Local 1180, Communications Workers of America AFL-CIO ("Local 1180"), Lourdes Acevedo ("Acevedo"), Nathia Beltran ("Beltran"), Adrienne Reed ("Reed"), Jo Ann Richards ("Richards") and Roseann Schembri ("Schembri"), commenced an action in the Supreme Court of the State of New York against the City [of New York] and [New York City Department of Citywide Administrative Services ("DCAS")] by filing a Summons with Notice. (Summons with Notice, ECF No. 1-1, at 1.) According to the Notice, the claims asserted by Plaintiffs were for "intentional and unintentional discrimination" based on sex, gender and race, in violation of various provisions of federal law, New York state law and New York City law, including the federal Equal Pay Act and

---

[1] Class counsel seeks payment of $300,000.00 directly from Defendants "for work in pursuit of the claims filed at the Equal Employment Opportunity Commission" and payment of $1,408,921.00 "for work done on behalf of the Settlement Class in this action." (Pl. Fee Mem., ECF No. 130, at 14.)

the New York State Equal Pay Law. (*Id*. at 2.) The Notice annexes and incorporates by reference a Charge of Discrimination that was filed with the U.S. Equal Employment Opportunity Commission ("EEOC") on December 5, 2013 against the City and DCAS by Local 1180 and Jane Doe Administrative Managers # 1-1000 and Jane Doe Former Administrative Managers # 1-1000, as well as a Supplemental Charge of Discrimination that was filed on November 19, 2014. (Summons with Notice, Exs. A & C.) The EEOC Charge and Supplemental Charge allege violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), in addition to violations of the Equal Pay Act. (*Id*.) It is alleged that the City and DCAS "engaged in a pattern or practice of wage suppression" in the job title Administrative Manager Non-Managerial (hereinafter, "Administrative Manager NM") that "adversely impacted women and persons of color." (Summons with Notice, Ex. A, ¶ 18.)

On April 7, 2017, the Summons with Notice was served upon Defendants. On April 21, 2017, Defendants filed a Demand for Complaint in the New York Supreme Court. (*See Local 1180, et al. v. City of New York, et al.*, Index No. 160513/2016, N.Y. Sup. Ct., N.Y. County, NYSCEF Doc. No. 8.) On April 26, 2017, Defendants removed the action to this Court on the basis that it asserted claims arising under federal law. (Notice of Removal, ECF No. 1, ¶¶ 1-4.)

On May 11, 2017, a Complaint was filed in this action in this Court. (Compl., ECF No. 5.) Certain of the plaintiffs named in the Complaint were the same as those named in the Summons with Notice (*i.e.*, Local 1180, Acevedo, Beltran and Reed); two of the plaintiffs that had been named in the Summons with Notice were dropped (*i.e.*, Richards and Schembri); and two plaintiffs were added (*i.e.*, Andrews and [] Reeves). (*Compare* Summons with Notice at 1 *with* Compl. at 1.) The Complaint asserts claims under the federal Equal Pay Act and the New York Equal Pay Law. (Compl. ¶¶ 117-28.) The Complaint—like the EEOC Charges— alleges that the City and DCAS engaged in discriminatory pay practices with respect to the job title Administrative Manager NM. (*See* Compl. ¶¶ 15, 19.)

On August 21, 2017, a First Amended Complaint ("FAC") was filed on behalf of the same plaintiffs as named in the Complaint. The FAC adds a claim under Title VII. (FAC ¶¶ 119-27.) . . . [T]he First Amended Complaint alleges that Andrews works at [the New York City Housing Authority ("NYCHA")] (FAC ¶ 8), which is not named as a defendant in this action.

On June 21, 2018, Defendants filed [a] motion for judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(2)(B), [for failure to join an indispensable party, *i.e.*, NYCHA]. (Mot., ECF No. 54, at 1.)

*Local 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 318 F. Supp. 3d 672, 674-75

(S.D.N.Y. 2018). The Court denied Defendants' motion for judgment on the pleadings, holding

that "[s]ubstantial indicia [were] present . . . that the City qualifies as Andrews's employer," and therefore that NYCHA was not a necessary party. *Id.* at 679.

Over an extended period, both before and after the filing and decision on Defendants' Rule 12(c) motion, the parties engaged in lengthy and difficult settlement negotiations, including many settlement conferences held before me. At the conclusion of those negotiations, in February 2019, the parties entered into a Stipulation of Class Action Settlement. (Stipulation, ECF No. 102-2.)

The Stipulation defines the Settlement Class as follows:

> All people employed by the City in the title of Administrative Manager, Non-Managerial at any time during the period from December 1, 2013 through April 30, 2017 in any agency, authority or other entity excluding only those Administrative Managers who worked at New York Transit Authority.

(*Id.* ¶ 3(a).)

Under the terms of the settlement, the City of New York agreed to pay a total amount of $5,181,668.65, and NYCHA agreed to pay a total amount of $454,015.35 (collectively referred to as "Back Pay"), pursuant to the terms of a side-NYCHA Memorandum of Agreement. (Stipulation ¶ 16.) This Back Pay, totaling $5,635,684.00, was to be used to pay legal fees and payment for work done by class members in the past. (*Id.*) Defendants and NYCHA also agreed to certain injunctive relief, including step increases and changes in labor practices. (*Id.* ¶¶ 8-9.)

Pursuant to the settlement, all persons in the job title Administrative Manager NM shall receive a back pay award, as well as a contribution to their annuity fund, based upon months of service during the class period. (Stipulation ¶¶ 8(e), 9, 20.) White females, nonwhite males and nonwhite females in the job title shall receive greater back pay awards than white males based

upon calculations performed by Thomas Econometrics Inc. of the disparate pay received by these groups during the class period. (*See* Stipulation, Corrected Appendix G, ECF No. 127-1, at 45-46.)

With respect to attorneys' fees, the Stipulation provided that, subject to Court approval, "Defendants shall pay directly the sum of [$300,000.00] towards Plaintiffs' legal fees and costs incurred by [Local 1180] in pursuit of the claims filed at the [EEOC], based on billing records submitted to the Court . . .." (Stipulation, ¶ 28(a).) The Stipulation also provided that, subject to Court approval, "Class Counsel shall file an application to recover legal fees and costs for work done on behalf of the Settlement Class in this action of not more than [25%] of the Back Pay award." (*Id.* ¶ 28(b).)

The Stipulation also calls for service award payments in the amount of $1,000.00 to be made by the City to each of the named plaintiffs, *i.e.*, Acevedo, Andrews, Beltran, Reed and Reeves. (Stipulation ¶ 24.)

Pursuant to the Stipulation, RG2 Claims Administration, LLC was to be appointed as claims administrator (the "Claims Administrator") for purposes of, among other things, providing notice to class members. (Stipulation ¶ 10-11.) Defendants agreed to pay up to $20,000.00 for the retention of the Claims Administrator. (*Id.* ¶ 15.)

On April 12, 2019, the Court entered an Order which, among other things, conditionally approved the terms of the parties' Stipulation; conditionally certified the Settlement Class; approved the form of notice and notice requirements to members of the Settlement Class; and

scheduled a hearing to consider the fairness, the reasonableness and adequacy of the proposed settlement ("Fairness Hearing").[2] (4/12/19 Order, ECF No. 112.)

Notices were sent on May 13, 2019 to the identified class members. (Baldwin 7/31/19 Decl., ECF No. 142, ¶ 6.) A website providing information about the settlement was made available to the public on May 3, 2019. (*Id.* ¶ 3.) The Notice instructed Class members how to opt-out of the settlement and informed members that they could serve and file objections to the settlement.[3] (*Id.*, Ex. B.)

Three class members filed objections. (Memo Endorsement on Objection Form, ECF No. 133; Memo Endorsement, ECF No. 135; Endorsed Letter, ECF No. 136.) Subsequently, two of the three objectants withdrew their objections. (Kurland 8/2/19 Ltr., Ex. B, ECF No. 143-2.) Fifteen class members requested to opt-out of the settlement.[4] (Baldwin 7/30/19 Decl., ECF No. 141, ¶ 3; Baldwin 7/30/19 Decl., Ex. A, ECF No. 141-1.)

On June 28, 2019, Plaintiffs filed a motion for attorneys' fees, seeking payment of the attorneys' fees contemplated by the Stipulation—*i.e.*, $300,000.00 from Defendants related to the EEOC claims and $1,408,921.00 (which represents 25% of the Back Pay) from the Back Pay award. (Pl. Fee Mem., ECF No. 130, at 14.)

The Fairness Hearing was held on August 7, 2019 in order to address class certification, settlement approval and attorneys' fees and costs. Plaintiffs and Defendants appeared at the

---

[2] The Fairness Hearing was adjourned from June to August 2019, after some third-party motion practice. (*See* 4/29/19 Order, ECF No. 128.)

[3] I find that the notice provided by Plaintiffs was adequate pursuant to Fed. R. Civ. P. 23(c)(2).

[4] The Claims Administrator identified 16 opt-outs, including an individual named Gina Potts-Doss who submitted an Exclusion Form. (*See* ECF No. 141-1, at 3.) However, Ms. Potts-Doss is not listed as a Settlement Class member in Appendix G, and Plaintiffs' counsel and the Claims Administrator have confirmed that Ms. Potts-Doss is not a Settlement Class member.

hearing, but no objectants appeared. At the hearing, Plaintiffs' counsel made a presentation regarding, among other things, the adequacy and fairness of the settlement.

## DISCUSSION

## CLASS CERTIFICATION

Pursuant to Fed. R. Civ. P. 23(a), Plaintiffs must satisfy each of four prerequisites in order to secure class certification: numerosity, commonality, typicality and adequacy of representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006). In addition, Plaintiffs "must qualify under one of three criteria set forth in Rule 23(b)." *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). In the present case, Plaintiffs seek certification under Rule 23(b)(3), based on the questions of law and fact common to the members of the class. (Pl. Class Settl. Mem., ECF No. 103, at 12.)

### I. The Settlement Class Satisfies Fed. R. Civ. P. 23(a)

#### A. Numerosity (Rule 23(a)(a))

In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, since the Settlement Class comprises 2,031 members (*see* Stipulation, Appendix G; Baldwin 7/31/19 Decl. ¶ 3), numerosity is satisfied.

#### B. Commonality (Rule 23(a)(2))

Commonality requires only one common issue of law or fact. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987). In the present case, the Plaintiffs claim that Defendants failed to pay them equally for substantially similar work in violation of the Equal Pay Act, Title VII and other related statutes. The members of the Settlement Class have identical claims. These common questions satisfy Rule 23(a)(2).

### C. Typicality (Rule 23(a)(3))

The requirements of commonality and typicality "tend to merge into one another." *Marisol*, 126 F.3d at 376. While the commonality inquiry asks if the named Plaintiffs' "grievances share a common question of law or of fact" with those of the proposed class, the focus of the typicality inquiry concerns whether "each class member's claim arises from the same course of events, and [whether] each class member makes similar legal arguments to prove the defendant's liability." *Id*. (internal citations omitted). Here, the Plaintiffs' claims stem from similar events and rely on similar legal arguments. Accordingly, Rule 23(a)(3) is satisfied.

### D. Adequacy Of Representation (Rule 23(a)(4))

A class is adequately represented when its counsel "is qualified, experienced, and generally able to conduct the litigation." *Marisol*, 126 F.3d at 378. Plaintiffs also must show that there is no conflict of interest between the named plaintiffs and other members of the class. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, the Court finds that Plaintiffs' counsel fairly and adequately has protected the interests of the class. In addition, Plaintiffs' counsel assert that they know of no conflicts of interest among class members. (Pl. Class Settl. Mem. at 11-12.)

## II. The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3)

Certification is appropriate under Rule 23(b)(3) when (1) "questions of law or fact common to class members predominate" over questions affecting only individual class members, and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating [this] controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole,

predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 126, 136 (2d Cir. 2001) (quotation, citation & alteration omitted). In cases like the present one, where the central issue is whether the employer paid its employees properly, predominance generally is found. *See Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004) (where "the gravamen of [Plaintiffs'] claim is that Defendant . . . deprived employees of . . . pay[,] [a]lthough [some] determinations . . . will require individualized findings, common liability issues otherwise predominate").

Since the most salient questions of law and fact are common to the class, Rule 23(b)(3) is satisfied because a class action is the superior method for resolving the claims of Plaintiffs and the Settlement Class. Settlement Class members have little interest "in individually controlling . . . separate actions." Fed. Rule Civ. Proc. 23 (b)(3)(A).

**SETTLEMENT APPROVAL**

I.      **Legal Standards**

Rule 23(e) of the Federal Rules of Civil Procedure mandates court approval of any settlement or dismissal of a class action. The standard to be applied in determining whether to approve a class action settlement is well established: the district court must determine that it is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In so doing, the court must "eschew any rubber stamp approval" yet simultaneously "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

A district court reviewing a settlement must consider nine factors that initially were enumerated in *Grinnell,* 495 F.2d at 463:

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citation omitted). The court also should analyze the negotiating process in light of "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983) (internal citations omitted).

Public policy favors settlement, especially in the case of class actions. "There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

II.    **Application**

A.    **The *Grinnell* Factors Favor Settlement**

Based upon my personal involvement in settlement conferences in this case and my review of the parties' submissions, the Court is satisfied that the settlement is fair, adequate and reasonable. The *Grinnell* factors weigh in favor of approving the settlement:

1.    **The Complexity, Expense And Likely Duration Of The Litigation**

This case had its complexities and would have required extensive expert discovery regarding damages calculations, as well as the appropriate comparators to use. The discovery process likely would have lasted many months and would have included many depositions of plaintiff class representatives and representatives of multiple city agencies. The expense and

delay of fully litigating this case through trial and any appeal would likely offset the gains of a higher settlement amount. Accordingly, this factor favors approval of the settlement.

### 2. The Reaction Of The Class To The Settlement

Of the 2,031 class members, there is only one outstanding objection of three,[5] and 15 opt-outs. This relatively small number of objections and opt-outs are indicative of the adequacy of the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 118 (2d Cir. 2005).

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed

While the parties need not have engaged in extensive discovery for a settlement to garner approval, a sufficient factual investigation must have been conducted to afford the Court the opportunity to make an intelligent appraisal of the settlement. *See Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982). In the present case, this settlement came after extensive proceedings before the EEOC, as well as Plaintiffs' examination of the Defendants' data. There is nothing in the record to suggest an underdeveloped investigation. Thus, this factor favors approval.

### 4. The Risks Of Establishing Liability And Damages And Maintaining A Class Action Through Trial

Impediments standing between the Class and recovery include a possible motion for summary judgment; a class certification briefing process; and appeal of class certification. In addition, Plaintiffs have identified the risks of establishing damages, as Defendants were likely to contest the accuracy of Plaintiffs' damages calculations. (Pl. Class Settl. Mem. at 5.)

---

[5] The substance of the objection is addressed *infra*.

### 5.    The Ability Of The Defendants To Withstand A Greater Judgment

Although Defendants likely could withstand greater judgment, their capacity does not, standing alone, suggest that the settlement is unfair. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 164, 178 n.9 (S.D.N.Y. 2000); *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011) (assigning "relatively little weight" to this factor).

### 6.    The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In the present case, the size of the settlement fund was the product of extensive negotiations and was based upon expert analysis.  No objections were made to the size of the settlement fund. Weighed against the risks of litigation, the Court finds the fund reasonable in this case.

### B.  The Remaining Objection Is Not Well Founded

Although there initially were three objections, two were withdrawn, so only a single objection remains. In that objection, Eric Rasmussen asserts that neither race nor gender should be a factor in determining the distribution of the Back Pay payment to settle Plaintiffs'

discrimination claims, but that rather these Back Pay monies should be paid "based solely on time in title." (Rasmussen Objection, ECF No. 136.)[6]

In response, Plaintiffs submitted an affidavit from Dr. Stephanie R. Thomas, an expert economist engaged through Thomas Econometrics, Inc. (Thomas Aff., ECF No. 143-1; Thomas resume, ECF No. 144-1.) Dr. Thomas was retained by Plaintiffs' counsel to "statistically assess whether there were meaningful differences in pay by gender and/or race among Administrative Managers, controlling for seniority, time in title, City Agency, and year." (Thomas Aff. ¶ 4.)

As explained by Plaintiffs' counsel in her letter responding to the objections:

> The proposed distribution of Back Pay in this action is proportional to the pay differential determined by Dr. Thomas and described in Appendix G. Specifically, 75% of the Back Pay will be distributed in accordance with these findings. Further, in order to remedy Plaintiffs' claims that Defendants suppressed the minimum salary of the entire Administrative Manager title regardless of race and gender, 25% of the Back Pay will be distributed to all Class Members, regardless of race or gender, based only on time in title.

(Kurland 8/2/19 Ltr. at 2.)

There is a rational basis for the settlement distribution that was agreed to by the parties in the Settlement Agreement, and the Court finds that it is fair and reasonable.

## SERVICE AWARD PAYMENTS

### I.   Legal Standards

Courts routinely approve service awards in employment-related class action cases to named plaintiffs, in addition to their proportionate share of the recovery, in order to compensate them for their additional efforts, risks and hardships in filing and prosecuting the action. *See, e.g.*,

---

[6] Mr. Rasmussen did not attend the Fairness Hearing, but his objection was addressed by Plaintiffs' counsel at the request of the Court.

*Andrews v. City of New York*, 118 F. Supp. 3d 630, 646 (S.D.N.Y. 2015) (approving service awards of $18,000 for each named plaintiff in recognition of time and effort expended).

## II.    Application

The Court approves the payment of service awards to Acevedo, Andrews, Beltran, Reed and Reeves, as agreed upon as part of the settlement of this class action. The $1,000.00 payment amounts are relatively modest, and Plaintiffs' counsel has represented that the named plaintiffs were actively involved in this case since its inception, including by being responsive to class counsel, answering questions via telephone and participating in numerous settlement conferences. (Pl. Fee Mem., ECF No. 130, at 13.)

<strong>ATTORNEYS' FEES</strong>

## I.    Legal Standards

"Under the American Rule[,] it is well established that attorney[s'] fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (citations and internal quotation marks omitted). "Under the American Rule, however, parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *Id*. (citations and internal quotation marks omitted). A contract to reimburse a plaintiff for attorneys' fees is valid and enforceable under New York law. *See Hooper Assocs., Ltd. v. AGS Computers, Inc*., 74 N.Y.2d 487, 492 (1989). A district court has broad discretion in awarding attorneys' fees under a valid contractual authorization, "and an award of such fees may be set aside only for abuse of discretion." *U.S. Fid. & Guar. Co.,* 369 F.3d at 74 (citations omitted).

Title VII of the Civil Rights Act authorizes the award of attorneys' fees to prevailing parties. *See* 42 U.S.C. § 2000e-5(k) (allowing "a reasonable attorney's fee" to prevailing parties under Title VII). When a plaintiff settles, "[i]f the relief obtained is of the same general type as the relief demanded in the complaint, a plaintiff may be considered to be a prevailing party." *Lyte v. Sara Lee Corp.*, 950 F.2d 101, 104 (2d Cir. 1991) (internal quotation marks omitted).

Where a settlement results in a common fund being created, courts may award attorneys' fees under either the "lodestar" method or the "percentage of the fund" method. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The "lodestar" is calculated by multiplying the reasonable number of hours that the case requires by the reasonable hourly rates. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The movant bears the burden of submitting evidence sufficient to support the hours worked and the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The trend in this Circuit is toward the percentage method . . . which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation . . ..'" *Wal-Mart Stores, Inc.*, 369 F.3d at 121 (citations omitted). Where the percentage of the fund method is used, the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (citation omitted).

The following principles guide the Court's lodestar calculations:

> Th[e lodestar] approach is intended to "produce[] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." . . . .

A reasonable rate is generally the "prevailing market rate[] for counsel of similar experience and skill to the fee applicant's counsel." . . .. In deciding what constitutes a reasonable rate, a court may consider "rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." . . .. "The relevant community to which the court should look is the district in which the case was brought." . . ..

In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" . . .. In so doing, the court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." . . .. Finally, "'the most critical factor' . . . 'is the degree of success obtained' by the plaintiff." . . .

*Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656-57 (S.D.N.Y. 2019).

"What constitutes a reasonable fee is properly committed to the sound discretion of the district court . . . and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding." *Goldberger*, 209 F.3d at 47 (citations omitted). The Second Circuit has articulated six factors to be applied in determining a reasonable common fund fee: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id*. at 50. "[A] fee award should be assessed based on scrutiny of the unique circumstances of each case, and 'a jealous regard to the rights of those who are interested in the fund.'" *Id*. at 53.

## II.     Application

### A.     $300,000.00 In Legal Fees Should Be Paid By Defendants For EEOC Proceedings

The Settlement Stipulation contains a contractual provision regarding EEOC-related attorneys' fees, which provides as follows: "Defendants shall pay directly the sum of [$300,000.00] towards Plaintiffs' legal fees and costs incurred by [Local 1180] in pursuit of the

claims filed at the EEOC, based on billing records submitted to the Court . . ..” (Stipulation at 17). This provision is enforceable under New York law. *See Hooper Assocs*., *Ltd*., 74 N.Y.2d at 492.

Plaintiffs have submitted to the Court billing records reflecting that Local 1180 was billed in excess of $850,000.00 for legal fees in pursuit of the EEOC claims. (*See* Healey-Kagan Decl., Exs. 1 & 2, ECF Nos. 131-1 & 131-2.) Thus, by the express terms of the Stipulation, the Defendants are contractually obligated to pay $300,000.00 directly to reimburse Local 1180. To the extent that the Court has a role in determining the reasonableness of the legal fees charged, the Court has reviewed the time entries and hourly rates of Plaintiffs’ counsel and is satisfied that $300,000.00 is a reasonable amount of legal fees to charge in pursuit of the claims filed at the EEOC. Thus, Defendants shall pay the sum of $300,000.00 directly to Plaintiffs’ counsel.[7]

### B. Plaintiffs’ Counsel Shall Receive $1,200,000.00 In Attorneys’ Fees From The Back Pay Award

In determining the legal fees to be paid to Plaintiffs’ counsel out of the proceeds of the class settlement, the Court has considered the relevant factors:

#### 1. Time And Labor Expended By Counsel

The time and labor expended by Plaintiffs’ counsel was significant. However, as set forth below in the discussion regarding the lodestar “cross-check,” the Court finds that some of the hours billed exceed what is reasonable. *See* Section II.C., *infra*.

#### 2. Magnitude And Complexities Of Litigation

Although in some respects the litigation was not complicated, it did have some complexities to it. For example, Plaintiffs needed to address standing issues, as well as issues

---

[7] Plaintiffs’ counsel stated at the Fairness Hearing that Local 1180 has not paid legal fees to The Kurland Group in respect of the EEOC proceedings. Thus, it is appropriate for the Defendants to pay the $300,000.00 directly to Plaintiffs’ counsel.

regarding the joint employer doctrine. Moreover, the litigation involved over 2,000 class members.

### 3. Risk Of The Litigation

Plaintiffs' counsel faced significant risks in the litigation and should be credited for bringing it to a successful resolution.

### 4. Quality Of Representation

The Court finds that The Kurland Group provided quality representation to its clients, as evidenced by the affidavits of support that were submitted to the Court. (*See* Healey-Kagan Decl., Ex. 5, ECF No. 131-5.)

### 5. Requested Fee In Relation To The Settlement

As discussed below, in the Court's view, Plaintiffs' requested fee of 25% of the Back Pay award is somewhat higher than what is reasonable. *See* Section II.C., *infra*.

### 6. Public Policy Considerations

Public policy favors a significant award of attorneys' fees in order to incentivize counsel similarly situated to the Plaintiffs' counsel herein to take on the representation of aggrieved employees in discrimination lawsuits on a contingency fee basis.

Taking all the relevant factors into consideration, the Court finds in its discretion that Plaintiffs should be awarded $1,200,000.00 in attorneys' fees from the Back Pay award, which represents just slightly over 21% of the common fund.[8] This action settled at a relatively early phase of the lawsuit, before trial and any depositions were conducted. A fee of $1,200,000.00 (in

---

[8] The Court's reduction in the amount of attorneys' fees sought by Plaintiffs' counsel increases the amount of the Back Pay award to be paid to class members and is reflective of the Court's "jealous regard" for the rights of such class members. *See Goldberger*, 209 F.3d at 53.

addition to the $300,000.00 paid in respect of the EEOC proceedings) is a substantial sum of money and, in the Court's view, adequately compensates Plaintiffs' counsel for the risks they took and their diligent efforts during the lengthy settlement negotiations. *See Varljen v. H.J. Meyers & Co.*, No. 97-CV-06742 (DLC), 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (awarding 20% as "adequately recogniz[ing] the efforts of counsel and the risks and complexities of this litigation while ensuring sufficient remaining funds for distribution to Class members"); *Banyai v. Mazur*, No. 00-CV-09806 (SHS), 2008 WL 5110912, at *3, *5 (S.D.N.Y. Dec. 2, 2008) (fee of 20% of the common fund found to be reasonable where "substantial amount of time was . . . expended in lengthy and difficult settlement negotiations").

## C.  The Lodestar "Cross-Check" Supports A Fee Award Of $1,200,000.00

The Court next conducts a lodestar analysis as a "cross-check" regarding the amount of fees awarded. Plaintiffs seek recovery of attorneys' fees based upon work done prior to this case being commenced and by persons who were not attorneys. The Court does not credit in its lodestar calculations any hours worked in connection with the prior state court Article 78 proceeding since fees in that proceeding are not recoverable under the so-called American Rule, discussed *supra*.[9] However, the Court does credit some of the work that was done prior to the

---

[9] Plaintiffs cite to a Supreme Court case and a Second Circuit cases in support of their argument that the Court should consider hours spent in the Article 78 proceeding in its attorneys' fees determination, *Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234 (1985); *Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994). (*See* Pl. 7/12/19 Ltr., ECF No. 138, at 2.) In *Webb*, the Supreme Court upheld the "District Court's decision to deny any fees for time spent pursuing optional administrative remedies."  471 U.S. at 235. In *Cullen*, the Second Circuit affirmed a district court's award of attorneys' fees "for work done in a prior administrative proceeding which 'was both useful and of a type ordinarily necessary to advance'" the subsequent civil rights litigation. 18 F.3d at 105 (citations omitted). In the present case, the administrative proceedings that were necessary to advance the litigation were those proceedings before the EEOC for which Plaintiffs' counsel already is receiving a fee award. The Article 78 proceeding, in contrast, was not necessary to advance the lawsuit.

filing of the state court lawsuit (which was removed to this Court), since it was preparatory in nature. *See Webb*, 471 U.S. at 243 ("Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.' Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case.").

Most of the work done in this case was performed by three attorneys, Yetta G. Kurland ("Kurland"), Erica T. Kagan ("Kagan") and Kathleen B. Cullum ("Cullum"). The Court has considered the hours of these attorneys in its lodestar calculations, but not the hours of others since the Court finds, in its experience, that a reasonable client would not agree to pay for the work of more than three lawyers in a case of this size and kind.

Based upon Kurland's background and experience,[10] the Court finds that an hourly rate of $600 is a reasonable rate for her. *See Williams*, 368 F. Supp. 3d at 658 ($600 hourly rate approved for attorney with 32 years' experience). Based upon Kagan's background and experience,[11] the Court finds that an hourly rate of $350 is a reasonable rate for her. *See id.* ($350 hourly rate approved for attorney with 10 years' litigation experience who for most of relevant period was an associate); *Rosado v. City of N.Y.*, No. 11-CV-4285 (SAS), 2012 WL 955510 at *5 (S.D.N.Y. Mar. 15, 2012) (awarding $350 an hour for an attorney with nine years' litigation experience).

---

[10] Kurland has over 22 years' experience, including many years working at a boutique firm specializing in civil rights. (*See* Kurland Decl., ECF No. 137, ¶¶ 2-4.)

[11] Kagan has ten years' experience, in large part in employment and civil rights cases, and became a partner in 2019. (*See* Kurland Decl. ¶¶ 9-12.) Thus, for most of the period that his case was pending, she was an associate.

Based upon its review of the New York State Unified Court System records,[12] the Court notes that Cullum was not admitted to practice in the State of New York until July 28, 2017. For the hours she billed prior to that date, the Court will credit her at a law clerk hourly rate of $150. *See Williams*, 368 F. Supp. 3d at 659. For the hours billed by Cullum after her admission to the New York bar, the Court credits her at a junior associate hourly rate of $200. *See Lewis v. Am. Sugar Ref., Inc.*, No. 14-CV-02302 (CRK), 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019) ("Courts in this district have approved hourly rates of $250 to $600 for civil rights attorneys with over ten years of experience and of $200 to $350 for associates).

Turning to the number of hours billed, the Court finds some of the hours billed to be in excess of that which is reasonable. For example, Plaintiffs' counsel have multiple entries for ministerial tasks for which an attorney should not be charging her client; for example, Kagan on a number of occasions billed to "[c]alendar upcoming dates" (*see*, *e.g.*, Healey-Kagan Decl., Ex. 3, ECF No. 131-3, at 104, 108, 114, 119, 120), and Cullum on some occasions billed to "[o]rganize file." (*See*, *e.g.*, *id*. at 120, 129.) In addition, there are multiple entries for team meetings where two and three attorneys discussed the case. (*See*, *e.g.*, *id*. at 114, 117, 119 ("Strategy meeting regarding matter"); 116, 118, 120 ("Attorney meeting regarding matter").) While these meetings conceivably brought some value to the client, the Court, in its experience, finds that a reasonable client would not agree to compensate Plaintiffs' counsel for the hours spent by each attorney attending these meetings.[13]

---

[12] N.Y. State Unified Court System, Attorney Search Website: http://iapps.courts.state.ny.us/attorney/

[13] *See Barrella v. Village of Freeport*, 56 F. Supp. 3d 169, 175 (E.D.N.Y. 2014) (awarding attorneys' fees only where no more than one attorney bills for intra-office conferences).

Based upon its careful review of all the relevant time entries, the Court's rough lodestar calculation[14] credits Kurland with 1,095 hours at $600 per hour ($657,000.00); Kagan with 742 hours at $350 per hour ($259,700.00); Cullen as a law clerk with 189 hours at $150 per hour ($28,350.00); and Cullen as a junior associate with 422 hours at $200 per hour ($84,400.00) for a total of $1,029,450.00. The lodestar calculation supports the amount of fees being awarded in this case.[15]

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED, ADJUDGED AND DECREED, as follows:

1. Final approval of the class settlement is granted;

2. The Stipulation of Settlement is approved and shall become effective the day after any and all appeals are finally resolved in favor of final approval or, if there are no appeals, upon expiration of the time to file a notice of appeal (the "Effective Date");

3. The Court certifies the Class and approves the Class Settlement as fair, adequate and reasonable;

---

[14] "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

[15] The Court is mindful that the amount of fees awarded is in excess of the Court's lodestar calculation. However, the lodestar calculation does not include the hours spent by Plaintiff's counsel after they submitted their attorneys' fees motion, including hours spent in preparing for and appearing at the Fairness Hearing. Moreover, and in any event, the Court in its discretion may apply a multiplier as it sees fit. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The difference between the $1,200,000.00 in fees being awarded and the lodestar amount would reflect a quite modest multiplier.

4. The Court approves the $1,000.00 service award payment to each of Acevedo, Andrews, Beltran, Reed and Reeves, and these amounts shall be paid by the Claims Administrator upon the Effective Date;

5. The Court awards attorneys' fees in the total amount of $1,500,000.00, payable as follows: $300,000.00 shall be paid directly by the Defendants to The Kurland Group upon the Effective Date, and $1,200,000.00 shall be paid out of the Back Pay award by the Claims Administrator to The Kurland Group upon the Effective Date;

6. The sum of $20,000.00 shall be paid by Defendants to the Claims Administrator upon the Effective Date;

7. Upon the Effective Date, as set forth in the Stipulation of Settlement, the Claims Administrator shall effectuate distribution of the settlement funds to the eligible Settlement Class Members in accordance with the terms of the Stipulation of Settlement, and all members of the Settlement Class shall be bound by all the terms, conditions and obligations of the Stipulation of Settlement; and

8. This action is dismissed with prejudice as to the Settlement Class, but the Court shall retain exclusive and continuing jurisdiction to interpret and enforce the terms, conditions and obligations of the Stipulation of Settlement.

**SO ORDERED.**

DATED:    New York, New York
              August 7, 2019

_____
**STEWART D. AARON**
**United States Magistrate Judge**